United States Court of Appeals,

Fifth Circuit.

No. 93-3004

Summary Calendar.

METROPOLITAN WHOLESALE SUPPLY, INC., Plaintiff-Appellant,

v.

The M/V ROYAL RAINBOW, its engines, apparel, furniture, tackle, etc., in rem, et al., Defendants-Appellees.

Jan. 19, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before DAVIS, JONES, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Appellant Metropolitan Wholesale Supply, Inc. ("Metropolitan") filed a maritime action for cargo damage and shortage against the M/V ROYAL RAINBOW, in rem, and Hyundai Merchant Marine Co., Ltd. ("Hyundai"); Royal Navigacion, S.A.; Ryan-Walsh, Inc.; and Overseas Freight Corp. ("Overseas"), in personam.[1] Metropolitan also brought an action for conversion of the cargo against Hyundai and Overseas. The district court granted defendants' motions for summary judgment, holding that Metropolitan's claims were barred by the applicable statutes of limitations. Metropolitan appeals only from the summary judgment for Hyundai and Overseas on the issue of conversion. We affirm.

BACKGROUND

This suit arises out of the shipment of 134 pallets of nails carried on board the M/V ROYAL RAINBOW from Korea to New Orleans pursuant to 10 bills of lading issued by Hyundai. Hyundai was the manager and/or charterer of the vessel. Overseas was Hyundai's agent at the Port of New Orleans. Metropolitan was the consignee of the subject cargo. Dynamic Ocean Services ("Dynamic"), a freight forwarder/customhouse broker, acted as Metropolitan's agent to receive the

---

[1]Ryan-Walsh, Inc. was subsequently dismissed without prejudice from the litigation.

cargo in New Orleans.

On January 11, 1991, Overseas issued an arrival notice advising Metropolitan and/or Dynamic of the M/V ROYAL RAINBOW's estimated arrival date in New Orleans of January 19, 1991. The vessel actually arrived on January 23. Its cargo was discharged at the Louisiana Avenue Wharf beginning on January 23 and ending on January 25. On January 31, 1991, Metropolitan requested a cargo survey by Centroport Surveyors, Inc. Centroport issued its report to Metropolitan on March 13, 1991. On February 26 the Louisiana Avenue Wharf 30-day free period expired. During the 30-day period, Overseas contacted Metropolitan repeatedly to ascertain when the cargo would be collected. On March 4, 1991, Hyundai exercised its right under clause 9 (Loading, Discharge, and Delivery) of the bills of lading to sell the cargo because Metropolitan had not collected it. Metropolitan knew that Overseas was contemplating selling the cargo for salvage by February 27, 1991. On March 4 Overseas notified Dynamic that the cargo had been sold to United Salvage. Metropolitan did not file this action until March 27, 1992.

## DISCUSSION

We review summary judgment de novo. *Abbott v. Equity Group, Inc.,* 2 F.3d 613, 618-619 (5th Cir.1993). Summary judgment may be granted if there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### I.

The central issue disputed by the parties is whether the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. §§ 1300-15; the Harter Act, 46 U.S.C.App. §§ 190-96; the bills of lading or Louisiana law should apply to this case. The district court did not decide which law applied because it found that Metropolitan's claims for conversion were time-barred under any scenario. Although this may be true, we must determine which law should apply because if Louisiana law applies, there is no admiralty jurisdiction and thus, no subject matter jurisdiction.[2]

COGSA governs "all contracts for the carriage of goods by sea to or from ports of the United

---

[2]Although Metropolitan's claim is for over $50,000, the complaint does not reveal a basis for diversity jurisdiction because it does not state Metropolitan's state of citizenship.

States and foreign trade." 46 U.S.C.App. § 1312. COGSA provides for a one-year time limit for bringing suit for loss or damage to cargo, which runs from the date of delivery. *Id.* § 1303(6). The Act defines the duty of care owed by the carriers from the time the goods are loaded on the ship until the time that the cargo is released from the ship's tackle at port. *Id.* § 1301(e); *Tapco Nigeria, Ltd. v. M/V WESTWIND,* 702 F.2d 1252, 1255 (5th Cir.1983). Metropolitan correctly points out that the one-year limit of COGSA would not apply to its claims for conversion because the cargo had already been discharged from the vessel at the time it was sold for salvage. This sale is the alleged act of conversion.

The bills of lading, however, incorporated COGSA's one-year limitation period as a term of the contract in clause 23. A bill of lading, the contract of carriage between the shipper and the carrier, continues to govern the rights and obligations of the parties until the delivery of the cargo. *Pressen v. Ceres Marine Terminals, Inc.,* 5 F.3d 734, 738 (4th Cir.1993). Likewise, the Harter Act applies to the period between the discharge of the cargo from the vessel until proper delivery of the cargo. *Tapco,* 702 F.2d at 1255. The Harter Act defines the carrier's duty for proper loading, stowage, custody, care, and delivery. 46 U.S.C.App. § 190. The act complained of is the salvage sale of the cargo by Hyundai. Thus, the dispositive issue is whether proper delivery occurred before the sale. If it did, then neither the Harter Act nor the bills of lading would apply, and Metropolitan's claim would be a state tort claim for conversion, not a claim within the admiralty jurisdiction of the court. *See Interocean Steamship Corp. v. New Orleans Cold Storage and Warehouse Co.,* 865 F.2d 699, 703-04 (5th Cir.1989).

"Proper delivery" within the meaning of the Harter Act is to discharge the cargo "upon a fit and customary wharf." *Tapco,* 702 F.2d at 1255. General maritime law requires a carrier to " "unload the cargo onto a dock, segregate it by bill of lading and count, put it in a place of rest on the pier so that it is accessible to the consignee, and afford the consignee a reasonable opportunity to come and get it.' " *F.J. Walker, Ltd. v. M/V LEMONCORE,* 561 F.2d 1138, 1142 (5th Cir.1977) (quoting *American President Lines, Ltd. v. Federal Maritime Bd.,* 317 F.2d 887, 888 (D.C.Cir.1962)).

The summary judgment evidence suggests that proper delivery had occurred. It is undisputed that the cargo was discharged from the vessel by January 25, 1991. Metropolitan was obviously aware that the cargo was discharged and ready to be picked up by January 31, the day that it requested a survey of the cargo by Centroport.[3] Although there did appear to be some problems separating or identifying the cargo on the dock, Centroport was able to locate the goods on the dock by bills of lading in early February. Finally, Metropolitan has never claimed that any damage occurred during the unloading and delivery onto the dock so as to preclude a finding of proper delivery. Thus, there is no genuine issue of material fact on the issue of proper delivery of the goods within the meaning of the Harter Act. Accordingly, Metropolitan's claim for conversion is predicated on state tort law, not admiralty law.

## II.

Because there is no longer any subject matter jurisdiction over Metropolitan's remaining state law claim for conversion, we must decide whether to exercise supplemental jurisdiction. The decision to exercise supplemental jurisdiction is within our discretion. *Newport Ltd. v. Sears, Roebuck & Co.,* 941 F.2d 302, 307 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 1175, 112 S.Ct. 1175 (1992). We must consider judicial economy, convenience, fairness, and comity in deciding whether to exercise supplemental jurisdiction over remaining state law claims. *Id.* Because the parties have presented summary judgment evidence and briefed their arguments on the remaining conversion issue, judicial economy and convenience weigh in favor of exercising jurisdiction. *See Ingram Corp. v. J. Ray McDermott & Co.,* 698 F.2d 1295, 1319-20 (5th Cir.1983).

## III.

Louisiana has a one-year prescriptive period for tort actions for conversion. La.Civ.Code Ann. art. 3492 (West Supp.1993); *Blunt v. City of New Orleans,* 505 So.2d 94, 95 (La.Ct.App. 4th Cir.1987). The one-year prescriptive period begins to run on the date a plaintiff discovered or should

---

[3]Metropolitan did deny in its statement of contested facts that it knew of the cargo's discharge on January 31, but it did not offer any proper opposing summary judgment evidence. "[U]nsubstantiated assertions are not competent summary judgment evidence." *Abbott,* 2 F.3d at 619.

have discovered the facts upon which his or her cause of action is based. *Griffin v. Kinberger,* 507 So.2d 821, 823 (La.1987). Knowledge that a tortious act caused the injury is sufficient to commence the running of a prescription. *Dixon v. Houck,* 466 So.2d 57, 60 (La.Ct.App. 2d Cir.1985). In this case, prescription will begin to run on the date that Metropolitan discovered that Overseas sold its goods for salvage.

Metropolitan argues that it did not become aware of its injury until July 27, 1991, the date that its marine surveyor reported its findings regarding the price and circumstances of the sale. However on March 4, 1991, Overseas notified Dynamic of the salvage sale. Under Louisiana law, the knowledge of an agent is imputed to the principal. *Granger v. Deville,* 583 So.2d 583, 586 (La.Ct.App. 3d Cir.1991). Dynamic was listed on some of the bills of lading as the party to notify. Further, one witness testified in a deposition that Dynamic was Metropolitan's agent. Metropolitan has never explicitly disputed this fact nor produced any summary judgment evidence to the contrary. Thus, there is no genuine issue of material fact regarding Metropolitan and Dynamic's agency relationship. Accordingly, notice of the salvage sale to Dynamic on March 4, 1991 was notice to Metropolitan.

Metropolitan also argues that Overseas did not inform it of the price the cargo would sell for, nor that the sale was made without competitive bids. Lack of knowledge as to the extent of the injury, however, does not suspend prescription. *Dixon,* 466 So.2d at 60. Because Metropolitan did not file this action until March 27, 1992, it is prescribed.

CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment for Defendants is AFFIRMED.