United States Court of Appeals,

Fifth Circuit.

No. 94-20228.

MENDES JUNIOR INTERNATIONAL COMPANY, Plaintiff-Counterclaim Defendant-Appellant,

v.

M/V SOKAI MARU, Defendant-Appellee,

and

Atlanta Maritime Corporation, Defendant-Counterclaim Plaintiff-Appellee.

Jan. 26, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before WHITE, Associate Justice (Ret.)[*], BARKSDALE and PARKER, Circuit Judges.

PER CURIAM:

Plaintiff-Counterclaim Defendant-Appellant Mendes Junior International Company ("Mendes") appeals the final judgment of the district court finding its claim time-barred and awarding damages in favor of Defendant-Counterclaim Plaintiff-Appellee Atlanta Maritime Corporation ("AMC") on its counterclaims. We affirm.

FACTS AND PROCEDURAL HISTORY

This dispute arises out of a contract to ship supplies from South America to Iraq in the early 1980s. Mendes had a contract to build a railroad in Iraq. Mendes consulted Agenave Maritime Agency ("Agenave") regarding shipments of supplies to Iraq, and Agenave,

_____

[*]The Honorable Byron R. White, Associate Justice of the United States Supreme Court, (Ret.), sitting by designation, pursuant to 28 U.S.C. § 294(a).

1

as agent for time-charterers, undertook to engage appropriate vessels for Mendes.

Agenave booked several ships with AMC, a time-charterer in Houston, Texas on "full liner terms," meaning that, in exchange for receiving a higher freight rate, AMC bore the burden of loading and discharging cargo and assumed all risk of delay in port. One of these ships, the M/V *Sokai Maru* ("*Sokai Maru* "), left Brazil in December 1980 to sail for the Middle East. The *Sokai Maru* apparently sailed to the Port of Aqaba, Jordan, but because of congestion, simply registered there instead of discharging its cargo. The *Sokai Maru* proceeded to Jeddah, Saudi Arabia to unload other cargo. At Jeddah, the *Sokai Maru* was detained for over a month because the Saudis claimed that the ship was on the Arab blacklist. The *Sokai Maru* then returned to Aqaba, arriving on February 12, 1981. However, she was only able to unload a small part of the Mendes cargo. The *Sokai Maru* then proceeded to Kuwait and discharged the remainder of the cargo.[1]

On March 24, 1982, Mendes filed suit against the *Sokai Maru, in rem,* her owners, her time-chartered owners, and AMC for damages arising out of the delay in shipment of its cargo. The district court dismissed the action against the owners and time-charterers for lack of personal jurisdiction. AMC counterclaimed against Mendes for amounts due from this and other voyages.

The case was tried before District Judge Sterling in June

---

[1]According to Kuwaiti port authority documents, the Mendes cargo was unloaded and warehoused on March 15, 1981.

1985.  Judge Sterling took the case under advisement, but died before handing down a decision.  In 1988, the parties consented to have Magistrate Judge Karen K. Brown conduct any and all further proceedings in the case.  The joint consent form filed with the district court contained an order of reference, signed by District Judge Singleton, assigning the case to Magistrate Judge Brown.  However, before Magistrate Judge Brown was able to enter judgment, she was elevated to the bankruptcy bench.  The case was subsequently transferred to Magistrate Judge Frances H. Stacy without the parties' additional consent or objection.

Magistrate Judge Stacy reheard final arguments on November 28, 1990.  In April 1991, she entered final judgment against Mendes on the grounds that its claim was barred by the statute of limitations, and rendered judgment in favor of AMC on its counterclaims.  758 F.Supp. 1169 (S.D.Tex.1991).  This Court reversed the judgment and remanded to the district court because Magistrate Judge Stacy lacked jurisdiction to enter judgment in the absence of both an order referring the case to her and written consent by the parties. *Mendes Junior Int'l Co. v. M/V Sokai Maru,* 978 F.2d 920 (5th Cir.1992).  The case was then assigned to District Judge Lynn Hughes, who rendered a final judgment on the record of the trial before Judge Sterling.  The final judgment ordered that Mendes take nothing, and awarded AMC $1,008,291.80 plus pre- and post-judgment interest and costs.

STANDARD OF REVIEW

In admiralty cases tried by the court sitting without a jury,

3

as in other cases, the district court's findings of fact are subject to the clearly erroneous standard of review, while questions of law are subject to *de novo* review. *Avondale Industries, Inc. v. International Marine Carriers, Inc.,* 15 F.3d 489, 492 (5th Cir.1984); *E.A.S.T., Inc. v. M/V Alaia,* 876 F.2d 1168, 1171 (5th Cir.1989).

## STATUTE OF LIMITATIONS

The Carriage of Goods by Sea Act ("COGSA") governs "all contracts for the carriage of goods by sea to or from ports of the United States and foreign trade." 46 U.S.C.App. § 1312; *Metropolitan Wholesale Supply, Inc. v. M/V Royal Rainbow,* 12 F.3d 58, 60 (5th Cir.1994). The duty of care owed by the carriers runs "from the time the goods are loaded on the ship until the time that the cargo is released from the ship's tackle at port." *Metropolitan Wholesale Supply, Inc.,* 12 F.3d at 61 (citing 46 U.S.C.App. § 1301(e) and *Tapco Nigeria, Ltd. v. M/V Westwind,* 702 F.2d 1252, 1255 (5th Cir.1983)). Section 1303(6) of COGSA provides a one-year statute of limitations for claims related to damaged cargo:

> In any event the carrier and the ship shall be discharged from all liability in respect of loss or damages unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered....

46 U.S.C.App. § 1303(6). Therefore, the statute of limitations begins to run when the goods are delivered. The question raised in this case is what date actual delivery of the Mendes cargo

4

occurred.[2]

Mendes contends that the statute of limitations did not begin to run until March 26, 1981, the date mentioned in a July 10, 1981 letter from AMC's president to Mendes.[3]  Although some of the cargo may have been delivered on March 15, 1981, the date when the *Sokai Maru* arrived in Kuwait, Mendes argues that delivery was not complete until March 26.  Therefore, when Mendes filed suit on March 24, 1982, it was within the one-year statute of limitations.

The district court found that the *Sokai Maru* left Kuwait on March 26, 1981.  Relying on documents issued by the Kuwaiti port authority, including dock receipts and storage documents signed by the Kuwaiti port authority, the *Sokai Maru* and the consignee, however, the court determined that the Mendes cargo was completely discharged on March 15, 1981.  The court concluded that the March 26, 1981 date mentioned in the letter sent to Mendes by AMC's president referred only to the date that the *Sokai Maru* sailed from Kuwait, not to the date of delivery of the Mendes cargo.  Our review of the record reveals no evidence that the district court's

[2]Several courts have addressed the definition of "delivery" with respect to the triggering of the statute of limitations under § 1303(6).  Some courts have found delivery to be complete when the cargo leaves the ship's sling, whether to a consignee or to an agent. *See C. Tennant Sons & Co. v. Norddeutscher Lloyd,* 220 F.Supp. 448 (E.D.La.1963).  Others have found that, in particular circumstances, delivery is not complete until after the consignee has a reasonable opportunity to inspect the goods. *See Orient Atlantic Parco, Inc. v. Maersk Lines,* 740 F.Supp. 1002, 1005 (S.D.N.Y.1990).  However, because this issue was not raised at trial, we decline to address it in this appeal.

[3]In the letter, AMC's president, John G. Miller, states that the "vessel finished discharging in Kuwait and sailed on March 26, 1981."

findings were clearly erroneous.  Nor did the district court err on any legal issue in this respect.  Mendes has presented no other credible evidence to prove that the discharge of its cargo continued after March 15, 1981.

Having found this action barred by COGSA's one-year statute of limitations, we find it unnecessary to address the remaining issues dealing with Mendes' damages claim.  We also agree with the district court's judgment on appellees' counterclaims, including its award of pre-judgment interest.  We agree with the court's reasoning, and find no clear error in the court's calculations.

CONCLUSION

Because the COGSA statute of limitations had expired as of March 15, 1982, nine days before Mendes filed this lawsuit, the action is barred by the statute.  The judgment of the district court is AFFIRMED.