Revised March 12, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-41414

_____

IN THE MATTER OF THE LIBEL AND PETITION OF KRISTIE LEIGH
ENTERPRISES, INC, AS OWNER OF M/V KRISTIE LEIGH; ET AL,

                          Plaintiffs,

IN THE MATTER OF THE LIBEL AND PETITION OF KRISTIE LEIGH
ENTERPRISES, INC, AS OWNER OF M/V KRISTIE LEIGH,

                          Plaintiff-Appellee,

GATEWAY TUGS, INC, AS OWNER PRO HAC VICE, OF THE M/V KRISTIE
LEIGH,

                          Plaintiff-Appellant-Cross-Appellee,

        v.

AMERICAN COMMERCIAL LINES, INC,

                          Defendant,

AMANDO AYALA; BARNEY JOE EDMONSON; ADALBERTO RAMIREZ,
Individually and as representative of the Estate of Felix
Ramirez, Deceased; MARIA TERESA RAMIREZ, Individually and as
representative of the Estate of Felix Ramirez, Deceased,

                          Claimant-Appellee-Cross-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Texas
_____
February 22, 1999
Before KING, Chief Judge, JONES and SMITH, Circuit Judges.

KING, Chief Judge:

Following a district court judgment ordering a shipowner to pay the entire amount of a limitation fund to the non-settling claimants in this admiralty action, both parties appeal portions of the district court order. The shipowner contends on appeal that the district court erred in failing to reduce the limitation fund to reflect dollar-for-dollar crediting of a previously entered into settlement. The non-settling claimants cross-appeal, arguing that the district court erred in reducing the value of the limitation fund. We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

On May 9, 1992, barges being pushed by the M/V Kristie Leigh, a tug bareboat chartered by Gateway Tugs, Inc. (Gateway), struck two fishing boats. Two occupants of the fishing boats, Daniel Castillo (age twenty-three) and Felipe Ramirez (age eleven) died, and three others suffered injuries.

Gateway sought exoneration from, or limitation of, its liability under the Limitation of Liability Act, 46 U.S.C. §§ 181-196 (the Act or the Limitation of Liability Act). Kristie Leigh Enterprises (the owner of the tug), Gateway (the tug owner pro hac vice), and the Valley Line Company (the barge owner), without division among them, posted an ad interim stipulation of $685,000, representing the value of the tug and barges. Gateway had insurance policies totaling $3,000,000. Each of the fishing boat occupants and their families filed claims. For the purpose

2

of this appeal, there are two relevant classes of claimants. The first group, the Castillo family (the Castillo claimants), settled with Gateway, while the second group, constituting the rest of the claimants (and referred to collectively as the Ramirez claimants), are the appellees/cross-appellants in this appeal.

Before the district court ruled on whether Gateway could limit its liability under the Act, the Castillo claimants and Gateway agreed on a settlement amount of $500,000. However, before the settlement hearing took place, the district court held that Gateway was not entitled to limit its liability under the Act. At the Castillo settlement hearing, a guardian ad litem appointed to protect the interest of a Castillo minor refused to agree to the settlement. Gateway then appealed the limitation question to this court, and while that appeal was pending and the resolution of the limitation of liability question was still uncertain, the Castillo claimants and Gateway entered into a second settlement agreement, this time for $650,000. The district court approved the settlement, granting the Castillo claimants' unopposed motion to dismiss their claims with prejudice.

This court reversed the district court on the limitation question, ruling that the Limitation of Liability Act applied to limit Gateway's liability. See Gateway Tugs, Inc. v. American Commercial Lines, Inc. (In re Kristie Leigh Enters., Inc.), 72

3

F.3d 479, 482 (5th Cir. 1996).  On remand, the district court reduced the limitation fund from $685,000 to $190,000, the value of the M/V Kristie Leigh itself without the barges, and ordered that Gateway distribute that amount among the Ramirez claimants. The district court did not further reduce the liability amount to reflect any crediting for the Castillo settlement.  It is uncontested that the Ramirez claimants sustained damages in excess of $190,000.

Gateway filed a notice of appeal, claiming that the district court erred in not reducing the limitation amount dollar-for-dollar to reflect the Castillo settlement.  The Ramirez claimants also appeal the district court order, arguing that the district court improperly reduced the limitation amount below the original $685,000 security.[1]

## II.  DISCUSSION

In admiralty cases tried by the district court sitting without a jury, the district court's findings of fact are subject

---

[1] The Ramirez claimants also initially argued on appeal that the district court improperly exonerated Kristie Leigh Enterprises from liability.  In their reply brief, however, they concede that the district court's inclusion of Kristie Leigh Enterprises as a named party in its order concerning the limitation of liability issue did not reflect the district court's prior order exonerating Kristie Leigh Enterprises, and we find that the record, taken as a whole, supports Gateway's contention that the district court properly exonerated Kristie Leigh Enterprises.  Cf. In re Kristie Leigh Enters., Inc., 72 F.3d at 480 n.1 (noting that both Kristie Leigh Enterprises and Valley Lines Company were exonerated by the district court at the close of trial).

4

to the clearly erroneous standard of review, while questions of law are subject to de novo review.  See Mendes Junior Int'l Co. v. M/V Sokai Maru, 43 F.3d 153, 155 (5th Cir. 1995); Avondale Indus., Inc. v. International Marine Carriers, Inc., 15 F.3d 489, 492 (5th Cir. 1994).  The questions presented in this case are entirely legal and are therefore reviewed de novo.

## A.  Settlement Crediting

Gateway argues in this appeal that the district court should have reduced the limitation fund dollar-for-dollar to reflect the Castillo settlement.[2]  The eventual limitation fund amount was $190,000, the Castillo claimants settled for $650,000, and Gateway therefore argues that the Castillo settlement exhausted the limitation amount and that the Ramirez claimants should take nothing.

This contention lacks merit.  Dollar-for-dollar crediting of settlement amounts is incompatible with Supplemental Rule F(8), which states that "[u]pon determination of liability," the limitation fund "shall be divided pro rata, . . . among the several claimants in proportion to the amounts of their

---

[2] At oral argument Gateway urged that, in the alternative, it was entitled to a pro rata settlement credit to reflect the Castillo settlement.  Gateway did not present this argument in its briefs to this court, and we therefore consider it waived. See Strong v. Bellsouth Telecomm. Inc., 137 F.3d 844, 853 n.9 (5th Cir. 1998) (stating that party waived issue it argued at oral argument but did not address in its briefs).  The question whether or how a shipowner can assert a right of subrogation to a settling party's claims within the concursus is thus left for another day.

respective claims." Fed. R. Civ. P. Supp. Rule F(8). A rule that the limitation fund should be reduced, dollar-for-dollar, by the amount of the settlement entered into by the shipowner is thus inconsistent with the approach taken in F(8), which simply divides the entire limitation amount among claimants. See Bouchard Transp. Co. v. Updegraff, 147 F.3d 1344, 1347 (11th Cir. 1998) ("Rule F implements the provisions of the Limitation Act by providing a mechanism for the pro rata distribution among claimants of the fund created by the Limitation Act's liability limits."). Therefore, the district court did not err in refusing to decrease the limitation fund available to the Ramirez claimants to reflect dollar-for-dollar crediting of the Castillo settlement.

B. The Reduction of the Limitation Fund

The Ramirez claimants appeal the district court's final judgment ordering Gateway to distribute $190,000 among them, as opposed to the original $685,000 stipulation amount. Gateway, Kristie Leigh Enterprises and the Valley Line Company, without division among them, initially signed an ad interim stipulation in which they posted a security of $685,000, equal to the value of the Kristie Leigh and the barges. The district court then reduced the amount of the security to $190,000, the value of the Kristie Leigh, based on the pure tort exception to the flotilla

rule.[3]  The Ramirez claimants argue that despite the later reduction in the stipulation amount, Gateway contractually obligated itself in the ad interim stipulation to be responsible for the original $685,000.

We find this argument unavailing.  The ad interim stipulation explicitly allowed "such decreases . . . [to the posted security] as this Honorable Court may from time to time order."  In addition, the Limitation of Liability Act itself permits the court "from time to time [to] fix as necessary [the limitation fund] to carry out the provision of section 183."  46 U.S.C. § 185.  Therefore, the court had the authority under § 185 to reduce the amount of the limitation fund, and thus, under the terms of the ad interim stipulation, the amount for which Gateway is responsible.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[3] The pure tort exception to the flotilla rule provides that "[w]here the injury is to a third person, to whom the shipowner owes no duty based upon consent, he may limit his liability to the ship against which a maritime lien would arise from the wrong," as opposed to the value of the entire flotilla.  Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co., 377 F.2d 724, 727 (5th Cir. 1967).  The Ramirez claimants do not contend that the district court improperly applied the pure tort exception; their only contention is that the language of the ad interim stipulation signed by Gateway obligated Gateway to pay the original $685,000, despite any later alterations to the stipulation amount.