Revised May 3, 2001

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 00-20117**
_____

**UNITED STATES OF AMERICA,**

Plaintiff - Appellant-Cross-Appellee,

**VERSUS**

**OCEAN BULK SHIPS, INC.; TRANSBULK CARRIERS,**

Defendants - Appellees-Cross-Appellants.

**M/V OVERSEAS HARRIETTE, its engines, tackle, etc.,**
**in rem; M/V OVERSEAS MARILYN,**

Defendants - Appellees.

----------------------------------------

**UNITED STATES OF AMERICA,**

Plaintiff - Appellant-Cross-Appellee,

**VERSUS**

**OCEAN BULK SHIPS, INC., in personam,**

Defendant - Appellee-Cross-Appellant,

**M/V OVERSEAS HARRIETTE, its engines, tackle, etc., in rem,**

Defendant - Appellee.

-------------------------------------

UNITED STATES OF AMERICA,

Plaintiff - Appellant-Cross-Appellee,

VERSUS

OCEAN BULK SHIPS, INC., in personam,

Defendant - Appellee-Cross-Appellant,

M/V OVERSEAS MARILYN, its engines, tackle, etc., in rem,

Defendant - Appellee.

-------------------------------------

UNITED STATES OF AMERICA,

Plaintiff - Appellant-Cross-Appellee,

VERSUS

OCEAN BULK SHIPS, INC., in personam,

Defendant - Appellee-Cross-Appellant.

-------------------------------------

Appeals from the United States District Court
For the Southern District of Texas

April 10, 2001

Before KENNEDY,[1] JONES and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

-------------------------------

[1]Circuit Judge of the Sixth Circuit, sitting by designation.

This appeal involves loss and damage to five separate famine relief shipments made by the United States of America (the United States) to certain African ports. Plaintiff-shipper, the United States appeals a final judgment awarding only limited damages in the amount of $7,300.08 on its claims for cargo loss and damage in the amount of $203,319.87 under the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300-1315. The United States asks this Court to vacate the district court's limited judgment and to render judgment in favor of the United States for the full extent of its damages. Defendants-carriers (defendants) cross-appeal, arguing that the United States failed to establish a prima facie case of loss or damage and that the United States failed to submit competent proof to support the damages claimed. Having reviewed the record, the arguments of the parties, and the relevant law, we vacate the district court's judgment awarding $7,300.08 and render judgment in favor of the United States in the amount of $203,319.87 plus prejudgment interest.

**I.**

Between 1994 and 1996, the United States, through its Commodity Credit Corporation (CCC), and with the assistance of several private relief organizations, shipped cargoes to famine-stricken areas of Africa on behalf of the Agency for International Development (AID). The cargoes were shipped under various charter parties made expressly subject to COGSA on the M/V OVERSEAS

3

HARRIETTE and the M/V OVERSEAS MARILYN, vessels owned by the defendants, Ocean Bulk Ships, Inc., and Transbulk Carriers, Inc. The shipments included a variety of foodstuffs such as vegetable oil, corn, and bulgur wheat, which were shipped to the African ports of Mombasa, Kenya; Beira and Maputo, Mozambique; Freetown, Sierra Leone; and Tema, Ghana. Clean bills of lading were issued for each shipment after the cargo was stowed, indicating that the cargo was received by the carrier in good condition. Unfortunately, the goods were not received in the same quantity or quality when discharged in Africa. Survey reports documenting the loss and damage indicated several problems. Some parts of the cargo were simply not received at all. Some parts of the cargo were received in a damaged and unusable condition. For example, bags were torn and spilled, and some of the cargo was wetted and rotten. The total amount of documented loss and damage to the cargo was $203,319.87.

In December 1998, the United States filed the first of five lawsuits, seeking damages for the lost and damaged cargo under COGSA. In February 1999, these suits were consolidated. In September 1999, the matter was tried to the bench. In December 1999, the district court entered judgment in favor of the United States for the limited sum of $7,300.08, the amount of damage that the defendants admit occurred prior to discharge. This appeal ensued.

**II.**

When COGSA was enacted in 1936, one of its express purposes was to "redress the edge in bargaining power enjoyed by carriers over shipper and cargo interests by setting out certain duties and responsibilities of carriers that cannot be avoided even by express contractual provision." 2 Thomas J. Schoenbaum, <u>Admiralty and Maritime Law</u> § 10-15 (3d ed. 2001) (citing 46 U.S.C. § 1303(8)). COGSA applies to "all contracts for carriage of goods by sea to or from ports of the United States in foreign trade." 46 U.S.C. § 1312. The provisions of COGSA are not generally applicable to charter parties. *Id*. § 1305. A shipper and carrier may agree, however, to a "Clause Paramount" by which the terms of COGSA are incorporated into a charter party. Schoenbaum, *supra*, § 10-15, at 89 & n.6. In this case, the charter agreements, shipping contracts, and bills of lading contain clauses making the shipments subject to the terms of COGSA. Thus, the parties agree that COGSA governs the resolution of this dispute.

COGSA sets up a "complex system of shifting burdens and accompanying presumptions of liability." *Id*. § 10-23, at 115. This use of presumptions and shifting burdens of proof "predates the statutory schemes of liability" and is "thus rooted in strong policy considerations" specific to the context of cargo loss. Most of these rules developed to alleviate the perceived unfairness of certain common law rules requiring a shipper to conclusively prove

5

the cause of cargo loss or damage notwithstanding the fact that the circumstances surrounding the loss or damage were primarily accessible to the defendant-carrier. *Id*. Those policy considerations are evident in COGSA's current statutory scheme, which shifts the burden of proof "more frequently than the winds on a stormy sea." *Id.; see also Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995) (characterizing COGSA's statutory scheme as a "ping-pong" game of burden shifting). The first stage of COGSA's statutory framework requires the shipper to establish a prima facie case of loss or damage by "proving that the cargo for which the bill of lading was issued was loaded in an undamaged condition, and discharged in a damaged condition." *Tubacex*, 45 F.3d at 954; *see also Quaker Oats Co. v. M/V Torvanger*, 734 F.2d 238, 240 (5th Cir. 1984). A clean bill of lading issued by the carrier to the shipper is prima facie evidence that the goods were received in an undamaged condition. *Shell Oil Co. v. M/T Gilda*, 790 F.2d 1209, 1213 (5th Cir. 1986); *Blasser Bros., Inc. v. N. Pan-American Line*, 628 F.2d 376, 381 (5th Cir. 1980); *see also* 46 U.S.C. § 1303(4) (a bill of lading is "prima facie evidence of the receipt by the carrier of the goods as therein described."). A COGSA shipper must also demonstrate damage upon discharge. *S.T.S. Int'l, Ltd. v. Laurel Sea Transp., Ltd.*, 932 F.2d 437, 440 (5th Cir. 1991). Damage upon discharge may be established by the report of an independent cargo surveyor attending the discharge. 46

6

U.S.C. § 1303(6); *United States v. Cent. Gulf Lines, Inc.*, 974 F.2d 621, 624-28 (5th Cir. 1992) (discussing the use of survey reports to establish loss or damage upon discharge); *see also* 22 C.F.R. § 211.9(c)(1) (requiring that a cargo surveyor attend the discharge of aid shipments made by the Agency for International Development or a cooperating sponsor).

A shipper's prima facie case creates a presumption of liability. *See Blasser*, 628 F.2d at 382. At that point, the burden of proof shifts to the defendant-carrier, which must prove (1) that it exercised due diligence to prevent the loss or damage to the cargo, 46 U.S.C. § 1304(1), or (2) that the loss or damage was the result of one of the Act's enumerated "uncontrollable causes of loss," *id*. at § 1304(2). *See also Tubacex*, 45 F.3d at 954; *Blasser Bros.*, 628 F.2d at 381.

If the carrier successfully rebuts the shipper's prima facie case, then the presumption of liability vanishes and the burden returns to the shipper to show that carrier negligence was at least a concurrent cause of the loss or damage to the cargo. *Tenneco Resins, Inc. v. Davy Int'l, AG*, 881 F.2d 211, 213 (5th Cir. 1989); *Blasser Bros.*, 628 F.2d at 382. If the shipper successfully establishes that the carrier's negligence is at least a concurrent cause of the loss or damage, then the burden shifts once again to the carrier, which must establish what portion of the loss was caused by other factors. *Tenneco Resins*, 811 F.2d at 211; *Blasser*

7

*Bros.*, 628 F.2d at 382. If the carrier is unable to prove the appropriate apportionment of fault, then it becomes fully liable for the full extent of the shipper's loss. *Tenneco Resins*, 811 F.2d at 211; *Blasser Bros.*, 628 F.2d at 382.

We review the district court's application of this burden shifting paradigm and other legal issues de novo. *See Mendes Jr. Int'l. Co. v. M/V Sokai Maru*, 43 F.3d 153, 155 (5th Cir. 1995). The district court's factual findings are reviewed for clear error. *Id*.

## III.

On appeal, the United States claims that it established a prima facie case by producing clean bills of lading as proof that the carriers received the goods in an undamaged condition and survey reports showing that the goods were either missing upon discharge or were discharged in a damaged condition. Such a showing is clearly sufficient under COGSA. *See*, *e.g.*, *Quaker Oats*, 734 F.2d at 240.

The defendants seek to avoid that conclusion in this case by arguing that the district court found the survey reports offered by the United States as evidence of loss or damage to be incredible. Thus, defendants maintain that the district court did not find credible evidence establishing the United States' prima facie case.

We disagree. The district court accepted the clean bills of lading as evidence that the cargo was delivered to the defendants

8

in good condition.  The district court did not question the reliability of the survey reports as tendered to establish *loss or damage* to the cargo upon discharge.  To the contrary, the district court accepted the virtually undisputed fact that the cargo was either lost or damaged upon discharge, and then held that the defendants were not responsible for the losses, either (1) because the damage occurring during discharge could have been caused by third parties, such as the port authority or its agents, *see U.N./F.A.O. World Food Programme v. M/V Tay*, 138 F.3d 197 (5th Cir. 1998) (interpreting the statutory exception codified at 46 U.S.C. § 1304(2)(q) to permit a carrier to avoid liability when it can prove that the loss or damage was caused after the carrier relinquished control of the cargo to a third party that, likewise, was acting completely beyond the carrier's control), or (2) because the United States failed to respond to the defendants' suggestion that improper packaging, an excepted cause under 46 U.S.C. § 1304(2)(n), played a role in the loss with evidence that the loss or damage was caused, at least in part, by negligence attributable to the carrier.  Both of these holdings presume the existence of a prima facie case, and thus focus upon later stages of the COGSA burden shifting paradigm.

To the extent that the district court raised any question at all about the United States' reliance upon the survey reports, that question was limited to the issue of whether the survey reports

9

were probative on the issue of *causation*, rather than *damage.* The district court referred to language appearing in two of the five survey reports, stating its opinion that the reports listed several possible causes without settling upon a single cause as more probable than another. Thus, the district court suggested that those two reports standing alone did not tend to establish what caused that portion of the loss and damage (about 35 percent) documented in those surveys. The issue of causation, however, and the shipper's burden to prove concurrent causation in particular, is not a required element of the shipper's prima facie case and is, likewise, limited to the later stages of COGSA's burden shifting framework. For the foregoing reasons, we reject the defendants' argument that the district court implicitly rejected the United States' evidence of damage upon discharge and conclude that the United States satisfactorily established a prima facie case of loss or damage under COGSA by producing clean on board bills of lading for each shipment, paired with records unambiguously documenting that the cargo was either missing or damaged when discharged at the destination port.

## IV.

The United States claims that the carriers failed to rebut its prima facie case. As set forth above, COGSA lets carriers rebut the shipper's prima facie case by showing that the facts and circumstances surrounding the loss fall within one of seventeen

10

statutory exceptions denominated as "uncontrollable causes of loss" or, more directly, by demonstrating that the carrier exercised due diligence in its stowage, carriage, and discharge of the cargo. *See* 46 U.S.C. § 1304(2). There is considerable controversy, and even an intra-circuit conflict, as to whether the carrier's rebuttal burden with respect to most of those exceptions is one of production or persuasion.

The first sixteen of the seventeen statutory exceptions to carrier liability set out at 46 U.S.C. § 1304(2) merely provide that the carrier is not liable for losses or damages caused by one of the listed causes. In this group are included losses attributable to such things as an act of God, *id*. § 1304(2)(d), an act of war, *id*. § 1304(2)(e), and the primary exception at issue in this case, a shipper's own improper packaging, *id.* § 1304(2)(n). The seventeenth exception, § 1304(2)(q), is a catch-all exception, which states that the carrier is not liable for losses or damages resulting from "any other cause arising without the actual fault and privity of the carrier" or its agents. That subsection goes on, however, to provide that, with respect to § 1304(2)(q), "the burden of proof shall be on the person claiming the benefit of this exception" to show that the carrier's fault or neglect did not contribute to the loss or damage. *Id*. § 1304(2)(q). Thus, the exception codified at § 1304(2)(q) expressly requires that the

11

carrier prove the applicability of the exception, while the remaining statutory exceptions are silent on the point.

Some Fifth Circuit panels have relied upon the additional statutory language in § 1304(2)(q) to implicitly place a heightened burden of proof on the carrier under § 1304(2)(q) and to permit a more lenient burden under the remaining exceptions. Specifically, some panels of this Court have required a carrier proceeding under § 1304(2)(q) to bear, not just the burden of going forward with evidence, but the burden of persuasion with respect to any defense premised upon that subsection. *See* **Tubacex**, 45 F.3d at 954-55 ("The burden on the carrier under" § 1304(2)(q) "is more than merely a burden of going forward with evidence, but rather it is a burden of persuasion with the attendant risk of non-persuasion."); **Quaker Oats**, 734 F.2d at 241 ("The carrier's burden of establishing his own freedom from contributing fault" under § 1304(2)(q) "is no mere burden of going forward with evidence, but a real burden of persuasion, with the attendant risk of nonpersuasion.") (internal quotations omitted); *see also* **Westinghouse Elec. Corp. v. M/V Leslie Lykes**, 734 F.2d 199, 207 (5th Cir 1984) (citing **In re Ta Chi Navigation (Panama) Corp.**, 677 F.2d 225, 229 (2d Cir. 1982), for the proposition that "[w]hen Congress wanted to put the burden of proving freedom from fault on a shipowner claiming the benefit of an exemption, it specifically said so"). Other courts have, in similar fashion, placed a mere burden of production on a carrier

12

seeking to rebut the shipper's prima facie case when the catch-all provision in § 1304(2)(q) was not involved.  *See*, *e.g.*, ***Sun Oil Co. v. M/T Carisle***, 771 F.2d 805, 811 (3d Cir. 1985) ("Thus, if the carrier wants to escape liability under COGSA without reference to a cause specified in section [130]4(2)(a)-(p), it must prove that its negligence did not contribute to the loss."); ***EAC Timberlane v. Pisces, Ltd.***, 745 F.2d 715, 719-20 (1st Cir. 1984) (declaring that § 1304(2)(q) imposes upon the carrier the "most demanding burden under maritime law," that is, the burden of persuasion, whereas other COGSA exceptions carry "less imposing burdens"); ***In re Ta Chi Navigation (Panama) Corp.***, 677 F.2d at 229 (opining that Congress intended for shipowners to bear a heightened burden of proof when relying upon § 1304(2)(q) and refusing to read that burden into § 1304(2)(b)); ***Lekas & Drivas, Inc. v. Goulandris***, 306 F.2d 426, 432 (2d Cir. 1962) (refusing to "read the qualification of [§ 1304(2)](q) into [§ 1304(2)](a)-(p)," because "Congress did not put it there"); ***Hecht, Levis & Kahn, Inc. v. S.S. President Buchanan***, 236 F.2d 627, 631 (2d Cir. 1956) ("The language relating to burden of proof in 46 U.S.C.A. § 1304(2)(q) . . . pretty clearly refers only to the carrier's burden of proving that damage comes within subsection (q) and does not relate to the 'inherent vice' exception contained in § 1304(2)(m).").  Under these authorities, it would seem that once the shipper has proved his prima facie case, the carrier claiming an exception under § 1304(2)(a)-(p)

13

bears merely a burden of production with respect to establishing the applicability of one of those exceptions. When, however, the carrier relies upon § 1304(2)(q), the carrier must bear the ultimate burden of persuasion with respect to the applicability of that exception.

The earliest Fifth Circuit decision to address the issue, however, at least implicitly reaches a different conclusion. In *Waterman S. S. Corp. v. United States Smelting, Refining & Mining Co.*, 155 F.2d 687, 691 (5th Cir. 1946), this Court held that a carrier seeking to avoid liability on the theory that the damages were caused by perils of the sea, § 1304(2)(c), or latent defects in the cargo, § 1304(2)(p), bore both the "burden of going forward" to demonstrate the applicability of the exceptions *and* "the risk of non-persuasion." *Id*. at 691. The proposition that a carrier bears both the burden of production and the burden of persuasion with respect to those exceptions was drawn from *Commercial Molasses Corp. v. New York Tank Barge Corp.*, 62 S. Ct. 156 (1941). In *Commercial Molasses*, the Supreme Court held that "the shipowner, in order to bring himself within a permitted exception to the obligation to carry safely, whether imposed by statute or because he is a common carrier or because he has assumed it by contract, must show that the loss was due to an excepted cause and not to breach of his duty to furnish a seaworthy vessel." *Id*. at 109. Furthermore, "since the burden is on the shipowner, [if] he does

14

not sustain it, . . . the shipper must prevail if, upon the whole evidence, it remains doubtful whether the loss is within the exception." *Id.* The ***Commercial Molasses*** court explained that this burden rests upon the carrier "not in consequence of his being an ordinary 'bailee' but because he is a special type of bailee who has assumed the obligation of an insurer." *Id.* In addition to ***Waterman***, which has never been overruled, there are decisions by this Court and others, which either suggest that the carrier bears the burden of persuasion for all § 1304(2) exceptions or fail to delineate any difference between the applicable burden for those exceptions codified at § 1304(2)(a)-(p) and the catch-all exception codified at § 1304(2)(q). *See* ***Shell Oil Co. v. M/T Gilda***, 790 F.2d 1209, 1213 (5th Cir. 1986) ("Section [130]4(2)(q) provides that the carrier has the burden of proving it was not at fault if the cause of the loss is not listed in § [130]4(2)(a)-(p). 46 U.S.C. § 1304(2)(q). Congress therefore could not have intended the shipper to bear the burden of proving negligence in every case. Most courts and commentators have concluded from the structure of § [130]4(2) that Congress did not intend to place such a burden on the shipper in any case."); *see also* ***Servicios-Expoarma, C.A. v. Industrial Mar. Carriers, Inc.***, 135 F.3d 984 (5th Cir. 1998) ("[T]he burden rests upon the carrier of goods by sea to bring himself within any exception relieving him from the liability which the law otherwise imposes on him."); ***Tokio Marine & Fire Ins. Co.***

15

*Ltd. v. Vessel Sammi Aurora*, 903 F.2d 1244, 1246 (9th Cir. 1990) ("The carrier is not liable for damages arising without its actual fault, but the burden of proof to show that it was without its fault rests with the carrier."); *Sony Magnetic Prods., Inc. v. Marivienti O/Y*, 863 F.2d 1537, 1540 & n. 3 (11th Cir. 1989) (noting that, although the defendant produced evidence that the loss was caused by a latent defect, an excepted cause under § 1304(p), such evidence was "inconclusive," which required the conclusion that the defendant-carrier failed to sustain its burden of proving the applicability of the exception).[2] In sum, at this time there does not appear to be any consensus among the circuits, or even in this circuit, concerning which COGSA party bears the burden of persuasion (and the risk of nonpersuasion) with respect to the applicability of the statutory exceptions codified at § 1304(2)(a)-(p) once the shipper makes out a prima facie case.

The defendants raised two of the seventeen statutory exceptions in the district court. The defendants' main contention at trial was that a significant portion of the damage was caused by the United States' failure to package the goods in a manner

_____

[2]We note that, to the extent that *Waterman* and similar Fifth Circuit cases constitute a direct holding on the issue of a defendant-carrier's rebuttal burden under COGSA, those cases are controlling under the "well-established prior panel precedent rule of this Circuit," which provides that "the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court." *Smith v. GTE*, 236 F.3d 1292, 1300 n.8 (5th Cir. 2001).

16

sufficient to survive the voyage. *See* 46 U.S.C. § 1304(2)(n) (exonerating carrier from liability for loss or damage caused by "insufficiency of packaging"). Exception (n) is one of those exceptions set out at § 1304(2)(a)-(p) as to which the precise scope of the rebuttal burden is unclear. While we have noted the apparent conflict or, alternatively, the incomplete resolution of this issue in our circuit precedent, we are not, in this case, compelled to decide whether the defendants' rebuttal burden with respect to their § 1304(2)(n) defense was one of production or persuasion. This is so because the defendants failed to produce competent evidence to meet either standard with respect to their § 1304(2)(n) defense.

Without regard to whether the carrier's rebuttal burden under § 1304(2)(n) is one of production or persuasion, the law is absolutely clear that the carrier must do more than offer mere speculation as to the cause of lost or damaged cargo. *Pacific Employers Ins. Co. v. M/V Gloria*, 767 F.2d 229, 241 (5th Cir. 1985); *Harbert Int'l Establishment v. Power Shipping*, 635 F.2d 370, 375 (5th Cir. 1981) (noting that mere speculation is not an adequate rebuttal). Indeed, under "the policy of the law," the carrier must "explain what took place or suffer the consequences." *Compagnie de Navigation v. Mondial United Corp.*, 316 F.2d 163, 170 (5th Cir. 1963); *see also* *The Vallescura*, 293 U.S. 296, 303 (1934) ("[T]he law casts upon [the carrier] the burden of the loss which

17

he cannot explain or, explaining, bring within the exceptional case in which he is relieved from liability."); *Pacific Employers Ins. Co.*, 767 F.2d at 242 (a shipper which has established a prima facie case is not required to then prove how the damage or loss occurred; rather, it is for the carrier to come forward with evidence sufficient to exonerate itself). Even the lesser burden of production, if applicable to the defendants' § 1304(2)(n) defense, requires that a COGSA defendant provide more than mere "blanket assertions about mysterious possible causes" in order to rebut a COGSA plaintiff's prima facie case. *Transatlantic Marine Claims Agency, Inc. v. M/V OOCL INSPIRATION*, 137 F.3d 94, 101-02 (2d Cir. 1998); *see also Pacific Employers Ins. Co.*, 767 F.2d at 242 (when the "exact cause of the damaged cargo remains a mystery," the carrier will be liable, because "any doubts as to the cause of the loss must be resolved against the carrier").

To satisfy this burden, defendants relied solely upon survey reports prepared at discharge. While those reports documented the quantity and compromised quality of lost and damaged cargo with some precision, three of the five survey reports failed to provide even a speculative assessment with regard to the cause of the missing and damaged cargo. Thus, defendants failed to offer any probative evidence whatsoever with respect to their § 1304(2)(n) defense as it relates to those three shipments. The two remaining survey reports, both involving shipments to Tema, Ghana, included

18

a list of five causes which may have contributed in some way to the loss, including the use of bags with very thin liners to package a portion of one shipment to Ghana and the entirety of a second shipment to Ghana. Together, the losses that can even potentially be associated with the surveyor's remarks about the packaging of these shipments is slightly less than one-third of the total loss claimed by the United States.

With regard to the first shipment to Ghana, as to which the surveyor's remarks are limited to only one of the commodities included in the shipment, the survey does not in any way tend to establish that insufficient packaging, rather than one of the other listed causes, was the cause of the damage. Clearly, with regard to this shipment, the surveyor's speculation is insufficient to meet even a burden of production with respect to establishing their § 1304(2)(n) defense. *See* **Pacific Employers**, 767 F.2d at 241; **Harbert Int'l Establishment**, 635 F.2d at 375.

With regard to the second shipment, the survey report also includes the surveyor's remark that the portion of the overall damage attributable to "excessive spilling" during discharge "occurred due to poor packaging." This is clearly *some* evidence that poor packaging was at least a concurrent cause of *some* of the loss and damage arising from this second shipment. This evidence, however, is likewise insufficient to exonerate the defendants. As an initial matter, the surveyor's brief comment is not the only

19

record evidence concerning the sufficiency of the packaging. The United States called Benjamin Myatt, a well-credentialed packaging expert employed by the Department of Agriculture, who is personally responsible for the development and specification of packaging systems used for foreign food assistance programs. Myatt testified that the cargos were packed in the standard packaging used for these commodities and that the United States had used the same type bags to ship 345,000 tons of food commodities the previous year. Myatt testified that such packaging is subject to rigorous field and laboratory testing for burst strength and other qualities and that he had personally observed the discharge of famine relief cargo packaged in the very same bags without significant problems. In light of the record evidence as a whole, we conclude that the brief comments in the survey report for this second shipment to Tema, Ghana, are insufficient to satisfy the defendants' rebuttal burden, without regard to whether that burden was one of production or persuasion. Moreover, and even if the survey report, standing alone, was sufficient to satisfy a burden of production, we would still hold that the United States is entitled to recover. The defendants conceded that some of the damage was attributable to their own negligence, a concession which determined the damages awarded after bench trial. Even assuming the defendants satisfied their burden of rebutting the United States' prima facie case as to this single shipment, the record establishes that carrier negligence was at least a concurrent cause of the loss, and the

20

defendants therefore bore the burden of establishing which portion of the loss was not attributable to carrier negligence. Defendants did not submit any evidence on the appropriate allocation of loss, and the United States is therefore entitled to recovery of the claimed damages for this shipment. *See **Tenneco Resins***, 811 F.2d at 211; ***Blasser Bros.***, 628 F.2d at 382.

The defendants also raised the applicability of the catch-all exception to liability codified in § 1304(q). Specifically, the defendants suggested that a portion of the loss and damage to the five shipments was attributable to pilferage, either from the vessel or from the docks and environs during discharge. The district court stated that a COGSA carrier is not responsible for careless discharge. This is an incorrect statement of the law. COGSA extends through discharge, and a COGSA carrier is subject to statutory obligations to "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." 46 U.S.C. § 1303(2). This Court has recognized, however, that § 1304(2)(q) may shield a carrier from liability when the carrier has absolutely no control with respect to the selection of port stevedores or the rate they will be paid and, further, no control with respect to how or when the cargo is discharged. *See **U.N./F.A.O. World Food Programme v. M/V Tay***, 138 F.3d 197, 200-02 (5th Cir. 1998). But this interpretation of § 1304(2)(q) is not broad enough to shield the carrier from liability for any and all

21

stevedore negligence. To the contrary, such "lack of practical control is ordinarily associated with a breakdown of law and order so that the carrier is powerless to prevent the unlawful or negligent conduct of the stevedores." *Id*. at 201. As to this exception, the defendants clearly bore, not only the burden of production, but the burden of persuasion. *See* 46 U.S.C. § 1304(2)(q).

To satisfy this burden, the defendants submitted several exhibits tending to establish that pilferage occurred from the vessel or from the docks during discharge at the ports of destination or other ports. While these exhibits are probative on the issue of whether some pilferage occurred, they do not tend to establish that the defendants had no control over either the stevedores or the discharge process. To the contrary, several of the exhibits demonstrate that the ship agents were in some circumstances able to exert influence to have certain vessels docked at berths considered more efficient or less prone to pilferage. The documents further reflect that defendants intended to rely upon contractual provisions to support a cause of action seeking recompense for any losses that the defendants were required to bear as the result of stevedore negligence. We further note that the defendants neither developed any arguments or testimony relating to these exhibits at trial nor raised the applicability of this exception on appeal. In light of the record as a whole, we

22

conclude that the defendants did not satisfy their burden of persuasion with respect to their § 1304(2)(q) defense. Moreover, this defense suffers from the same weakness as the defendants' § 1304(2)(n) defense. That is, even if we were to assume that the defendants carried their rebuttal burden, the record establishes that carrier negligence was at least a concurrent cause of the damages claimed, and the defendants failed to make any attempt to apportion or separate the losses attributable to their own negligence as compared to the losses attributable to pilferage or some other cause. *See* **Tenneco Resins**, 811 F.2d at 211; **Blasser Bros.**, 628 F.2d at 382.

For the foregoing reasons, we conclude that the defendants failed to rebut the United States' prima facie case. Further, even if the defendants had carried such burden, the United States established that at least some of the loss and damage was attributable to the defendants' negligence, and the defendants failed to respond with evidence tending to establish precisely what portion of the claimed loss and damage was attributable to another concurrent cause.

## VI.

The United States asks us to render judgment in its favor. The United States contends that the extent of liability is established by declarations in the bills of lading covering the shipments. COGSA expressly allows a shipper to declare the value

23

of its cargo as long as "the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading." 46 U.S.C. § 1304(5). "This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier." *Id*.

The district court found that the declarations of the cargo's value embodied in the bills of lading were sufficient evidence of damages claimed in this case. We agree. *Id*. The carriers' only rebuttal to this proof of value is that the bills of lading were inadmissible "double hearsay." The carriers state that "[t]he information for the value as listed on the bills of lading is not based on personal knowledge of the agents of defendants who issued the bills of lading." Regardless of whether this is true, it is irrelevant. The statute allows the *shipper* to declare the cargo's value, and inclusion of this value on the bill of lading evidences the carrier's acquiescence to this declaration. The United States' declared value was prima facie evidence of the cargo's value and, absent any rebuttal evidence from the carrier, is adequate to set the value of the cargo for damage calculation purposes.

Moreover, we are comforted in this case by testimonial evidence from the government employee responsible for setting the value of the cargo, who testified that the very precise bill of lading values declared were drawn from invoices reflecting the government's actual purchase price for the commodity. We are not,

24

therefore, dealing with a potential differential between the value declared for shipping purposes and the value as measured by the price paid for the commodity.  In addition, the record contains the government's claim forms for the various cargos.  The damages detailed therein are based upon a unit price for the commodities plus freight costs.  Testimonial evidence established that these documents would likewise have been checked against and premised upon the government's actual purchase price for the goods.  Thus, the damages claimed are not premised upon a unitary value taken directly from the bill of lading, but are instead calculated using the actual costs to the government.  We agree with and, therefore, affirm the district court's factual determination that the United States produced competent evidence of the damages claimed.  We, therefore, see no barrier to a decision rendering judgment in favor of the United States.

## V.

The United States requests that this Court award prejudgment interest running from the date of last discharge through the time of judgment, calculated in accordance with 31 U.S.C. § 3717.  The United States preserved error on this issue in the district court.  In this Circuit, there is a strong presumption in favor of awarding pre-judgment interest.  *See Ryan Walsh Stevedoring Co., Inc. v. James Marine Serv., Inc.*, 792 F.2d 489, 492 (5th Cir. 1986).  The defendants respond that the United States exercised undue delay in

bringing these actions and, therefore, that it should be denied prejudgment interest. The United States filed the five actions consolidated here in December 1998, less than three years after the last date of discharge and well within the six year statute of limitations set by Congress for claims filed by the CCC. 15 U.S.C. § 714b(c)(1994). This suit was timely filed. Finding no other reason to deny prejudgment interest, we therefore render judgment for the United States in this case in the amount of $203,319.87, plus pre-judgment interest calculated in accordance with 31 U.S.C. § 3717.

## CONCLUSION

For the reasons stated above, the judgment of the district court is **VACATED** and judgment is **RENDERED** in favor of the United States in the amount of $203,319.87 plus pre-judgment interest.