**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 3, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 03-20760
Summary Calendar

---

UNITED STATES OF AMERICA,

                                                            Plaintiff-Appellee,

versus

OCEAN BULK SHIPS, INC.; ET AL.,

                                                            Defendants,

OCEAN BULK SHIPS, INC.; TRANSBULK CARRIERS, INC.,
in personam,

                                                            Defendants-Appellants.

- - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                                                            Plaintiff-Appellee,

versus

OCEAN BULK SHIPS, INC.; ET AL.,

                                                            Defendants,

OCEAN BULK SHIPS, INC., in personam; TRANS BULK
CARRIERS, INC., in personam,

_____

Appeal from the United States District Court for
the Southern District of Texas
(USDC Nos. H-01-CV-1639,
H-01-CV-2428 & H-01-CV-2486)

_____

Before REAVLEY, JOLLY and DENNIS, Circuit Judges.

PER CURIAM:[*]

The judgment is affirmed for the following reasons:

1. We agree with the analysis of the district court. The appellant carriers do not challenge liability but only the measure of damages. As to damages, the carriers do not contest the measure of the quantity of goods that were missing or arrived in damaged condition. They only challenge the method of valuation of the goods, a question of law we review de novo.

2. The Commodity Credit Corporation (CCC), an agency of the United States, purchased the goods—foodstuffs intended for humanitarian relief—and paid for their land and sea transportation. As a matter of law and common sense, the government was entitled to reimbursement for the damaged and missing cargo in the amount that it paid for the cargo plus the land and sea transportation costs it paid. Basing the damages on the

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

costs to the government of the goods and their transportation, as reflected in the f.a.s. value and ocean freight charges stated in the bills of lading issued by agents of appellants, is a valid method of calculating damages in these circumstances. United States v. Ocean Bulk Ships, Inc., 248 F.3d 331, 343 (5th Cir. 2001). The government offered evidence that the values stated in the bills of lading reflected the actual costs incurred by the government, and defendants offered no evidence to the contrary. "The United States' declared value was prima facie evidence of the cargo's value and, absent any rebuttal evidence from the carrier, is adequate to set the value of the cargo for damage calculation purposes." Id.

3. Defendants' argument that the value of the goods cannot be considered in calculating damages because the goods were taken out of commerce and therefore had no market value ignores the costs incurred by the government in purchasing the goods, and our recognition that a carrier "cannot use CCC's humanitarian orientation to avoid damages otherwise properly awarded." United States v. Central Gulf Lines, Inc., 747 F.2d 315, 320 (5th Cir. 1984). Further, a regulation provides that, for purposes of claims against ocean carriers, goods shipped under the Food for Peace Program may be valued at the market price or the f.a.s. price used in the pending case. 22 C.F.R. § 211.9(c)(2)(ii)(B) (2003).

4. Defendants argue that the United States cannot recover through assignments from the private voluntary organizations (PVOs) because the PVOs suffered no financial losses. This argument defies economic reality because the government suffered an

economic loss in the form of the costs it incurred in purchasing and paying for the transportation of the missing and damaged cargo in issue.  The government's purposes in participating in the Food for Peace Program, whatever they might be, were not met when the defendants failed to deliver the food to the intended beneficiaries.  Further, a regulation provides that the government may pursue claims against ocean carriers in these circumstances "[w]hether or not title to commodities has transferred from CCC to the cooperating sponsor . . . ."  Id. § 211.9(c)(2)(i) (2003).  In discussing this regulation we have recognized that "the United States has standing to sue" for missing cargo under the Food for Peace Program.  Central Gulf Lines, 747 F.2d at 317.  Thus, appellants' argument that the PVOs "obtained sole legal title to the cargoes once they were loaded aboard the various ships in the United States," appellants' brief at 16, strikes us as legally irrelevant.

5.  The damages awarded are consistent with our precedents and federal regulations, and do not violate COGSA's requirement that the carrier shall not "be liable for more that the amount of damage actually sustained."  46 U.S.C. § 1304(5).

AFFIRMED.

4