983 F.2d 410
 1993 A.M.C. 957
 ASSOCIATED METALS & MINERALS CORP., Plaintiff-Appellee,
v.
S/S JASMINE, her engines, boilers, tackle, etc.; Jollister
Shipping Corporation S.A.; Euro-Asia Chartering
Corporation, (PTE) Ltd., Defendants-Appellants,
Redwood Shipping Corporation, Defendant.
 No. 66, Docket 92-7417.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 14, 1992.
Decided Jan. 7, 1993.
 
 Shaun F. Carroll, New York City, (Nourse & Bowles, of counsel), for defendants-appellants.
 Harold M. Kingsley, Hicksville (Kingsley & Kingsley, of counsel), for plaintiff-appellee.
 Before: OAKES, KEARSE, and PRATT, Circuit Judges.
 GEORGE C. PRATT, Circuit Judge:
 
 FACTS AND BACKGROUND
 
 1
 Our journey in this case began during the 1989 monsoon season in Visakhapatnam, India. Jollister Shipping Corporation S.A. ("Jollister") contracted with Associated Metals & Minerals Corporation ("Associated") to carry Associated's cargo of 13,500 metric tons of hot-rolled steel plates aboard the M/V J. Jasmine from India to the United States. The parties expressed their agreement in a voyage charter party dated July 18, 1989. A contract unique to admiralty law, a voyage charter party describes a form of "private carriage", which is distinguished from so-called "common carriage" agreements by two factors: (1) the entire ship is usually engaged to carry the charterer's cargo on a single voyage, and (2) the vessel is typically navigated by its owner. See generally Grant Gilmore & Charles L. Black, Jr., The Law of Admiralty, Ch. 4 (2d ed. 1975) ("Gilmore"). Consistent with a voyage charter, Jollister owned and navigated the J. Jasmine, which on this occasion was loaded solely with Associated's cargo for shipment to the United States.
 
 
 2
 Before Associated purchased them, the steel plates had been stored in an outdoor storage yard at the Steel Authority of India, where they were exposed for two months to India's monsoon rains as well as to air heavily laden with industrial pollutants. Under the charter party, Associated was responsible as charterer for the risk and expense of loading, and Jollister's responsibilities did not begin until the J. Jasmine was loaded. The steel plates were loaded continuously over a nine-day period, despite the rain, some of which fell into the four open holds. Upon loading, Jollister issued to Associated's agents bills of lading covering the steel-plate cargo, which Associated retained throughout the voyage. Associated's agents signed the bills in which Associated acknowledged that the steel plates had been loaded bearing "Superficial/Atmospheric/Surface rust", with "Edges rusty". When the J. Jasmine reached the United States, surveyors determined that many of the steel plates suffered not surface rust, but heavy seawater rust. The plates were so heavily damaged by rust that they had to be sold as salvage, causing Associated a loss of $214,982.56. Associated then sued Jollister, as carrier, and the vessel in rem.
 
 
 3
 The cause of the rust was disputed at a three-day bench trial before Robert L. Carter, Judge of the United States District Court for the Southern District of New York. Jollister contended that the rust was benign fresh-water rust which originated during the lengthy outdoor storage of the steel plates in India, and was exacerbated by the heavy rains allowed into the holds during loading, all before Jollister became responsible for the plates. In its argument that it was not responsible for further rust developments, Jollister relied on the bills of lading which had been claused to reflect the surface rust. Associated, however, convinced the district court that the rust that caused the plates to be sold as salvage had developed due to seawater intrusion into the J. Jasmine's poorly ventilated, unseaworthy holds. Appealing from a judgment for the full amount claimed by plaintiff, defendants primarily argue that the district court erred when it determined that the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. §§ 1300-1315 (1988), governed the parties' rights and responsibilities under this voyage charter party. That error, claims Jollister, led to the district court's prejudicial misapplication of the COGSA burden of proof rules to the evidence before it, and to the consequent judgment in plaintiff's favor.
 
 DISCUSSION
 
 4
 A. Applicability of COGSA.
 
 
 5
 Jollister contends that the voyage charter party does not incorporate the provisions of COGSA, see 46 U.S.C.App. §§ 1300-1315, and that common-law doctrines governing private carriage shipping contracts govern the parties' relations.
 
 
 6
 An excursion into the historical necessity for COGSA is helpful here. COGSA was enacted to guard against perceived abuses by public carriers who exempted themselves from a high standard of liability using elaborately claused bills of lading. Nichimen Co. v. M.V. Farland, 462 F.2d 319, 327 (2d Cir.1972) (Friendly, J.); see generally Gilmore § 3-24. Charter parties, roughly synonymous with private carriage, were not so regulated. COGSA drafters considered parties to a charter as holding equivalent bargaining power. Nissho-Iwai Co. v. M/T STOLT LION, 617 F.2d 907, 913 n. 7 (2d Cir.1980), appeal after remand, 719 F.2d 34 (2d Cir.1983). Charter parties were therefore governed by general maritime law. 46 U.S.C.App. § 1305. See also Gilmore § 4-2, at 198-99. Although the distinction is rooted in the past, even today COGSA does not apply to private carriage. Nichimen Co., 462 F.2d at 326-27; see generally Gilmore § 4-5.
 
 The statute provides:
 
 7
 The provisions of this chapter shall not be applicable to charter parties; but if bills of lading are issued in the case of a ship under a charter party, they shall comply with the terms of this chapter.
 
 
 8
 46 U.S.C.App. § 1305.
 
 
 9
 "Charter parties" are thus statutorily exempted from automatic coverage by COGSA. Id. Simply put, charters are not in themselves subject to COGSA unless COGSA has been incorporated by reference in the charter. Gilmore § 4-1; Thomas J. Schoenbaum, Admiralty and Maritime Law § 9-6, at 293 (1987) ("Schoenbaum"). Because charter parties are statutorily exempted from automatic coverage under COGSA, if the act is to apply, the parties must clearly indicate their intention to incorporate it into the charter party itself. Thus, contracts of private carriage must evidence a clear intent to incorporate COGSA into the charter party itself, and not merely into bills of lading issued under the charter party. See In re Marine Sulphur Queen, 460 F.2d 89, 103 (2d Cir.) (limited incorporation of COGSA in charter party and bill of lading did not incorporate all of COGSA's provisions into charter party), cert. denied, 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 246 (1972).
 
 
 10
 Drafters of COGSA discerned a need for uniformity among bills of lading issued by public carriers, because they are intended as instruments of title to be negotiated to third parties along the carrier's route. Gilmore § 4-10. In private carriage, i.e., a voyage or time charter, the bill of lading is often issued to the charterer-shipper. Id. at 218-19. Here, "so long as it remains in [the charterer-shipper's] hands, [the bill of lading] usually is a mere receipt as between the parties to the charter and does not perform the additional function of a contract for the carriage of goods." Nichimen Co., 462 F.2d at 328; Atlantic Banana Co. v. M.V. Calanca, 342 F.Supp. 447, 453 (S.D.N.Y.1972) (bill of lading issued by carrier to shipper who is also charterer is mere receipt; relations of parties are governed by charter party), aff'd mem., 489 F.2d 752 (2d Cir.1974); see generally 2A Benedict on Admiralty § 34 (Michael F. Sturley et al. eds., 7th ed. 1992) ("Benedict"); Gilmore § 4-10, at 218-19.
 
 
 11
 Bills of lading accordingly have less significance in private carriage agreements, in which the parties look primarily to the charter party to determine their rights and responsibilities. See, e.g., Vanol USA, Inc. v. M/T Coronado, 663 F.Supp. 79, 81 (S.D.N.Y.1987) (COGSA held inapplicable as bill of lading was mere receipt for goods, not contract of carriage); Alamo Chem. Transp. Co. v. M/V Overseas Valdes, 469 F.Supp. 203, 208-09 (E.D.La.1979) (same); Ministry of Commerce v. Marine Tankers Corp., 194 F.Supp. 161, 162-63 (S.D.N.Y.1960) (where bill of lading remains in possession of charterer, bill of lading regarded as mere receipt, which does not supersede the charter provisions); Benedict § 34.
 
 
 12
 The district court found that incorporation of COGSA into the charter party was intended, based on a provision common to the bills of lading, and on a reference to COGSA in the charter party. We review the district court's textual construction of the charter party and bills of lading de novo. Bellefonte Reinsurance Co. v. Aetna Casualty & Surety Co., 903 F.2d 910, 912 (2d Cir.1990) (proper standard for appellate review of a pure textual construction by district court is de novo ); United States v. International Bhd. of Teamsters, 899 F.2d 143, 148 n. 5 (2d Cir.1990) (de novo review of district court's interpretation of language of document such as contract or bylaw); Network Publishing Corp. v. Shapiro, 895 F.2d 97, 99 (2d Cir.1990) (interpretation of contract is generally a question of law and subject to de novo review). See also Antilles S.S. Co. v. Members of American Hull Ins. Syndicate, 733 F.2d 195, 203-07 (2d Cir.1984) (Newman, J., concurring) (determination of meaning of contract that is either unambiguous or not illumined by extrinsic evidence is question of law).
 
 
 13
 COGSA is incorporated into the bills of lading by the following language:
 
 
 14
 This Bill of Lading shall have effect subject to the provisions of [COGSA]. Such legislation shall be deemed to be incorporated herein * * *.
 
 
 15
 The charter party contains a single reference to COGSA; it requires that COGSA be incorporated into all bills of lading to be issued under the charter party:
 
 
 16
 44. U.S.A. CLAUSE PARAMOUNT. Bills of Lading are to include the following clause: 'This bill of lading shall have effect subject to the provisions of [COGSA], which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading be repugnant to said Act to any extent, such term shall be void to that extent, but no further.' (emphasis added).
 
 
 17
 We conclude that the district court erred in holding the above language sufficient to establish an express incorporation of COGSA into the charter party, based on the standard elucidated in our caselaw.
 
 
 18
 Language similar to that used by Associated and Jollister has been found insufficient in this circuit to incorporate COGSA into the charter party. See, e.g., Nissho-Iwai Co., 617 F.2d at 913, 914 n. 7 (no express incorporation of COGSA into time charter arose from charter clause incorporating COGSA into "[a]ll bills of Lading"); cf. Nichimen Co., 462 F.2d at 328-29 (charter party incorporated COGSA by stating charter was "[s]ubject to provisions of carrier's bill of lading" which stated COGSA applied).
 
 
 19
 Nor does the charter party contain the clear language of incorporation found in contracts construed in other circuits. In California & Hawaiian Sugar Co. v. Columbia Steamship Co., 391 F.Supp. 894, 897 n. 6 (E.D.La.1972), aff'd, 510 F.2d 542 (5th Cir.1975) (per curiam), the court found the charter party expressly incorporated COGSA stating "[t]his Charter Party and any bill of lading issued hereunder shall have effect subject to the provisions of [COGSA] * * *." Similarly, in Horn v. CIA de Navegacion Fruco, S.A., 404 F.2d 422, 429 n. 6 (5th Cir.1968), cert. denied, 394 U.S. 943, 89 S.Ct. 1272, 22 L.Ed.2d 477 (1969), the charter provided a "Clause Paramount, as attached, to be fully incorporated in this Charter Party." (emphasis added). In Hartford Fire Ins. Co. v. Calmar Steamship Corp., 404 F.Supp. 442, 445 (W.D.Wash.1975), the district court determined that the parties had intended COGSA's incorporation into a time charter based on the following language:
 
 
 20
 [This Charter ] is further subject to the following clauses, both of which are to be included in all bills of lading issued hereunder:
 
 U.S.A. Clause Paramount
 
 21
 This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein * * *. (emphasis added).
 
 
 22
 The district court's error in this case stemmed from an imprecise reading of the charter party language, and from improper reliance on caselaw relating to contracts for public carriage. The court stated:
 
 
 23
 Defendants misstate the law in arguing that the charter party rules, rather than those of the Carriage of Goods by Sea Act ("COGSA"), govern this controversy. The charter party here contains a clause paramount incorporating COGSA, as do the bills of lading. Thus there is no conflict between the charter party and the bills of lading. The bills of lading constitute the contract of carriage and COGSA thereby becomes controlling. National Automotive Publications, Inc. v. United States Lines, Inc., 486 F.Supp. 1094, 1099 (S.D.N.Y.1980) (Duffy, J.).
 
 
 24
 National Automotive, however, involved a contract for common carriage, rather than a voyage charter party, which is expressly exempted from COGSA.
 
 
 25
 B. Burden of Proof.
 
 
 26
 In private carriage, unlike COGSA, the burden of proving damage as well as the cause of the damage remains always with the plaintiff. Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 110-11, 62 S.Ct. 156, 160-61, 86 L.Ed. 89 (1941). Thus, the charterer must prove that the cargo damage was proximately caused by the carrier's breach of a specific obligation contained in the contract of carriage, which in this case is the voyage charter party. Id. at 110, 62 S.Ct. at 160. See also Schoenbaum § 9-6, at 293; Anthony N. Zock, Charter Parties in Relation to Cargo, 45 Tul.L.Rev. 733, 738 (1971). If the evidence on cause of damage or source of negligence is in equipoise, the charterer-plaintiff's claim must fail. In re Marine Sulphur Queen, 460 F.2d at 104. See generally R. Glenn Bauer, The Measure of Liability for Cargo Damage Under Charter Parties; A Second Look, 21 J.Mar.Law & Comm. 397, 407-15 (1990).
 
 
 27
 Under COGSA, in contrast, the plaintiff need only establish a prima facie case, at which time the defendant has the burden to show that the damage did not result from its negligence. Siderius, Inc. v. M.V. Amilla, 880 F.2d 662, 664 (2d Cir.1989); Demsey & Associates, Inc. v. S.S. Sea Star, 461 F.2d 1009, 1014-15 (2d Cir.1972); see generally Gilmore § 3-43. The district court applied the COGSA burden of proof rules as follows:
 
 
 28
 Once a prima facie case is established the burden shifts to the defendants to show either that the damage did not result from their negligence or that they are otherwise protected by one of the excepted clauses of COGSA. * * *. Plaintiff is not required to establish defendants' fault or negligence in incurring damage to its cargo * * * unless defendants have put that issue in question by an evidentiary showing tending to refute plaintiff's prima facie case and tending to show their freedom from fault.
 
 
 29
 Defendants have not met their burden of overcoming plaintiff's prima facie case. (citations omitted) (emphasis added).
 
 
 30
 Since we conclude that the voyage charter party did not incorporate COGSA, it follows that the district court erred in placing on defendants the COGSA burden of proving their freedom from negligence. Instead, since the charter party did not effectively incorporate COGSA, it was Associated's burden under the general maritime rules, to prove that Jollister had breached the contract of carriage. The district court's erroneous placement of the burden of proof requires a remand for reconsideration of the evidence under the proper standard.
 
 
 31
 Defendants also challenge several of the district court's factual findings as clearly erroneous. We find it unnecessary to address these claims at this time.
 
 CONCLUSION
 
 32
 We reverse and remand to the district court for further proceedings which shall include a redetermination of liability by applying the common-law burden of proof established for private carriage shipping contracts.