UNITED STATES of America, Petitioner–Appellee,

v.

ADMINISTRATIVE ENTERPRISES, INCORPORATED, Principal Services, Incorporated, Zion Ventures, Incorporated, et al., Respondents–Appellants.

No. 94–2548.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1994.

Decided Feb. 2, 1995.

---

Gary R. Allen, William Patton (argued), Dept. of Justice, Tax Div., Appellate Section, Douglas W. Snoeyenbos, Dept. of Justice, Tax Div., Appellate Section, Washington, DC, for petitioner-appellee.

Ramune R. Kelecius, Office of U.S. Atty., Civ. Div., Harvey M. Silets (argued), Karyn G. Gershon, Nicole N. Auerbach, Katten, Muchin & Zavis, Chicago, IL, for respondents-appellants.

Before POSNER, Chief Judge, and REAVLEY * and COFFEY, Circuit Judges.

POSNER, Chief Judge.

 In 1990 the Internal Revenue Service, pursuant to 26 U.S.C. § 7602(a) (on which see generally *Reisman v. Caplin,* 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964)), issued a summons to Principal Services, Inc., seeking documents relating to transactions with Burton and Naomi Kanter, whose tax liability the IRS was investigating. Principal Services did not respond, but it was not until three and a half years after the issuance of the summons that the United States got around to asking for an order enforcing it. 26 U.S.C. § 7402(b); *Reisman v. Caplin, supra,* 375 U.S. at 445–46, 84 S.Ct. at 511–12. The district court issued the order, and shortly afterward, dissatisfied with Principal Services' compliance, a second order, this one under the authority of 26 U.S.C. § 7604(b), holding Linda Gallenberger, the president of Principal Services, in civil contempt and threatening her with criminal sanctions if she did not produce additional documents, which she did. (Other summonses were issued against entities related to Principal Services and were enforced by the district court in similar fashion, but for simplicity we shall pretend that Principal Services was the only recipient of the summons.) She and Principal Services appeal from the orders, the appealability of which is confirmed by *Church of Scientology v. United States,* — U.S. —, — n. 11, 113 S.Ct. 447, 452 n. 11, 121 L.Ed.2d 313 (1992). Gallenberger's compliance with the district court's orders does not render the case moot. It is not too late to give the appellants meaningful relief, for example in the form of an order directing the government to return the documents and all copies it has made of them. *Id.;* see also *In re Envirodyne Industries, Inc.,* 29 F.3d 301, 304 (7th Cir.1994).

* Hon. Thomas M. Reavley of the Fifth Circuit.

■ The principal ground on which the appellants opposed the enforcement of the summons in the district court was that the government is misusing the summons power to circumvent limitations on discovery in the Tax Court, before which a proceeding to determine the Kanters' tax liability is pending. The appellants argue, and the government does not seriously deny, that the reason it decided years after the summons had been issued to reactivate it in effect by obtaining an order enforcing it was that Principal Services was holding documents relating to the Kanters' tax liability that the government had mistakenly thought it could obtain from the Kanters directly and now wanted to get from Principal Services. Principal Services is in the business of retaining documents, and preparing tax returns, for taxpayers—and its main clients, it appears, are the Kanters.

The appellants are reluctant to acknowledge that obtaining documents for use in a Tax Court proceeding is a legitimate purpose of an IRS summons. Discovery in Tax Court proceedings is traditionally informal and non-coercive, and there is concern that allowing the IRS to use the summons power as a discovery tool would unfairly tip the balance of procedural advantages against the taxpayer. (For divergent views within the Tax Court, compare *Westreco, Inc.*, TC Memo 1990–501, ¶ 90,501 PH Memo TC, with *Ash v. Commissioner*, 96 T.C. 459 (1991).) We need not weigh that concern here. For the appellants pitch their case for reversal on different grounds. The first is that the summons is "stale." Enforcement was not sought until three and a half years after it was issued. No reported case has involved such a long interval between the issuance of the summons and the filing of the petition to enforce it. The appellants argue that at some point during this period they came reasonably to believe that the summons would never be enforced—that the government had lost interest—and they discarded documents arguably within the scope of the summons and as a result now face possible sanctions.

The government argues that the appellants knew perfectly well it was still interested in the documents, and that the delay was due to the Kanters' foot-dragging in turning over copies of the same documents in the Tax Court case. We do not have to resolve the dispute. The summons carried no expiration date. No statute of limitations applies to a petition to enforce a summons—on the contrary, after six months failure to comply with a summons tolls all relevant tax statutes of limitations. 26 U.S.C. § 7609(e)(2). No one suggests that we should borrow a statute of limitations from some other law, and we have not found a case involving an IRS summons in which that was done. When there is no statute of limitations in the picture, the law, including federal common law, relies upon the doctrine of laches to protect the recipient of the summons from unreasonable delay in enforcement. This versatile, flexible, and serviceable doctrine, originally equity's counterpart to statutes of limitations (which were not applicable to suits in equity), is a ground for dismissing a suit if the defendant can show that the plaintiff delayed unjustifiably in filing and that as a result the defendant was harmed, either by being hampered in his ability to defend or by incurring some other detriment. *NLRB v. P*I*E Nationwide, Inc.*, 894 F.2d 887, 893–94 (7th Cir.1990); *EEOC v. Vucitech*, 842 F.2d 936, 942–43 (7th Cir.1988); *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1033 (Fed.Cir.1992). There is no defense of "staleness," despite a dictum in *United States v. Gimbel*, 782 F.2d 89, 93 (7th Cir. 1986), on which the appellants rely. Laches is a legal doctrine; it has structure; "staleness" is an epithet.

A threshold question concerning the application of the doctrines of laches in this case is whether it can ever be invoked against the federal government. Some courts regard the question as completely unsettled. E.g., *JANA, Inc. v. United States*, 936 F.2d 1265, 1269 (Fed.Cir.1991). There is no dearth of statements that laches cannot be used against the government, see, e.g., *Costello v. United States*, 365 U.S. 265, 281, 81 S.Ct. 534, 542–43, 5 L.Ed.2d 551 (1961); 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3652, p. 169 (2d Ed.1985), yet both *P*I*E* and *Vucitech* involved suits by the government, and the availability of laches in at least some government suits is sup-

ported by Supreme Court decisions, notably *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 373, 97 S.Ct. 2447, 2458, 53 L.Ed.2d 402 (1977); *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60–61, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984), and *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990), that refuse to shut the door completely to the invocation of laches or estoppel (similar doctrines) in government suits. Other cases besides *P\*I\*E* and *Vucitech* in which our court has entertained the possibility of a defense of laches against the government include *United States v. Lindberg Corp.*, 882 F.2d 1158, 1163 (7th Cir.1989); *In re Lapiana*, 909 F.2d 221, 223 (7th Cir.1990), and *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1090–91 (7th Cir.1992).

■ One possibility, suggested by both *Heckler* and *Lindberg*, is that only the most egregious instances of laches can be used to abate a government suit. Another would be to confine the doctrine to suits against the government in which, as in this case, there is no statute of limitations. (We toyed with that possibility in *Martin v. Consultants & Administrators, Inc., supra*, 966 F.2d at 1091.) Still another possibility—supported by *Clearfield Trust Co. v. United States*, 318 U.S. 363, 369, 63 S.Ct. 573, 576, 87 L.Ed. 838 (1943), which held that laches was a defense to the government as a holder of commercial paper—is to draw a line between government suits in which the government is seeking to enforce either on its own behalf or that of private parties what are in the nature of private rights, and government suits to enforce sovereign rights, see *Martin v. Consultants & Administrators, Inc., supra*, 966 F.2d at 1101 (concurring opinion), and to allow laches as a defense in the former class of cases but not the latter. There is no better illustration of the enforcement of a sovereign right than the use of compulsory process to determine liability for unpaid taxes. Consistent with this suggestion, *Oropallo v. United States*, 994 F.2d 25, 28–31 (1st Cir.1993) (per curiam), holds that estoppel may not be used to delay the time for seeking a tax refund, though the issue is an open one in this circuit, see *Overhauser v. United*

*States*, 45 F.3d 1085, 1089 (7th Cir.1995), and the questions when the government may be stopped from suing and when it may be stopped from pleading a defense of statute of limitations in a suit against it may not demand identical answers.

We need not pursue the question of the existence and scope of a defense of laches in government suits to resolve this case. For suppose, though this seems unlikely, that the doctrine applies with undiminished force to all types of government suit. We would still have to decide whether the elements of the doctrine were present. Whether the first—unjustifiable delay—was would depend on whether the government, as it asserts but the appellants deny, could not reasonably have been expected to obtain the documents sooner, either directly from the Kanters or by seeking enforcement of the summons promptly. That is a murky question on this record but we would have to answer it only if the second element of the doctrine—prejudice to the defendant from the unjustifiable delay—were satisfied, which it has not been. The appellants assert that they were lulled into thinking the summons had been abandoned. The plausibility of the assertion may be questioned. The summons had no time limit, was never withdrawn, and, as we are about to see, required the recipient to retain—indefinitely—the documents within its scope. Even if this point is ignored, being lulled and then rudely awakened is not the kind of harm, if it is a harm at all rather than merely another metaphor, that allows laches to be used to deprive a plaintiff of his rights. A more concrete harm must be shown. Cf. *Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc.*, 988 F.2d 1157, 1163 (Fed.Cir.1993). All that the appellants say on this score is that they *may* have discarded documents that the government *may* want and the district court *may* sanction them, using its power of criminal contempt, for having discarded them. (The law requires that all documents sought by a summons be retained. 26 U.S.C. § 7609(i)(1); *United States v. Asay*, 614 F.2d 655, 660 (9th Cir.1980).) This sequence ending in sanctions is entirely hypothetical and in fact high-

ly unlikely. Should the district court perversely penalize the appellants for an innocent mistake—say, an innocent misconstruction of the scope of the summons—they can appeal to us from the judgment imposing the penalty and we will reverse, since a judgment of criminal contempt requires proof of willfulness. *United States v. Dixon*, —— U.S. ——, —— and n. 5, 113 S.Ct. 2849, 2858 and n. 5, 125 L.Ed.2d 556 (1993); *Betts v. United States*, 10 F.3d 1278, 1281 (7th Cir.1993).

The other (but as we have just made clear a related) ground of appeal is that the documents which the district court made the appellants turn over to the government by leaning on Gallenberger are outside the scope of the summons, fairly read. The summons seeks "books and records related to transactions in the period 1983 through 1988 with" Burton Kanter, members of his family, and trusts, partnerships, and corporations in which he or members of his family have interests. The appellants interpret this to mean books and records related to transactions between the custodian on the one hand (the target of the summons), and Kanter and his various relatives and holdings, on the other, while the district court interpreted the quoted language to mean books and records related to all transactions involving Kanter and his various relatives and holdings.

Neither party has favored us with a discussion of the standard of appellate review for the interpretation of summonses, and we cannot find a case dealing with the question. The general rule is that the interpretation of a single document or part thereof, whether it is a statute, a consent decree, an arbitration clause, or an ordinary contract clause, is reviewed de novo, that is, without giving any deference to the interpretation by the first-line decider, here the district judge. See, e.g., *Florida East Coast Ry. v. CSX Transportation, Inc.*, 42 F.3d 1125, 1128 (7th Cir. 1994); *Coplay Cement Co. v. Willis & Paul Group*, 983 F.2d 1435, 1438 (7th Cir.1993); *United States v. Knote*, 29 F.3d 1297, 1299–1300 (8th Cir.1994); *Associated Metals & Minerals Corp. v. S/S Jasmine*, 983 F.2d 410, 413 (2d Cir.1993); *R.M. Perez & Associates, Inc. v. Welch*, 960 F.2d 534, 537 (5th Cir. 1992). No reason is suggested or leaps to

mind for making an exception for summonses. The good sense of the rule can be questioned in cases, of which this is one, in which uniform interpretation, so important in the case of a statute, is not important. *International Ass'n of Machinists v. General Electric Co.*, 865 F.2d 902, 905 (7th Cir.1989). This is not the occasion for exploring such doubts or testing the outer limits of the rule (where some fraying is visible, for example in *In re Weber*, 25 F.3d 413, 416 (7th Cir.1994)). Our decision is not sensitive to the precise scope of our review. Although the appellants' reading is more grammatical, the district court's is far more sensible; and we have just had an occasion for expressing our doubts about the role of grammatical punctilio in legal interpretation. *Overhauser v. United States, supra*, 45 F.3d at 1086–87. It is apparent that the government is interested in transactions in which Kanter and his family and their investment vehicles are involved and not just in the terms of the custodianship arrangement.

AFFIRMED.