**STEEL COILS, INC.**

v.

**CAPTAIN NICHOLAS I M/V, et al.**

**No. CIV.A. 99–3921.**

United States District Court,
E.D. Louisiana.

Feb. 14, 2002.

---

John Barr Gooch, Jr., Christopher E. Carey, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, LA, for Plaintiff.

Dimitri P. Georgantas, Georgantas & Walters L.L.P., Houston, TX, Scott Allen Soule, Metairie, LA, Charles Felician Lozes, Terriberry, Carroll & Yancey Energy Centre, New Orleans, LA, Francis J. Barry, Jr., Joseph E. Lee, III, Deutsch, Kerrigan & Stiles, New Orleans, LA, Jason A. Schoenfeld, Terriberry, Carroll & Yancey Energy Centre, New Orleans, LA, for Defendants.

### ORDER AND REASONS

FALLON, District Judge.

Before the Court is the motion of defendants, Captain Nicholas Maritime S.A. ("Captain Nicholas") and Seastar Maritime Management, S.A. ("Seastar"), for summary judgment on the issues of (1) whether they should be dismissed on the basis of not being "carriers" as defined by the Carriage of Goods by Sea Act, ("COGSA"), 46 App.U.S.C.A. § 1300, et seq., and (2) whether COGSA's $500 package limitation should be applied in respect to Steel Coils' claim against Seastar and Captain Nicholas. Also, before the Court is the motion of defendant Western Bulk Carriers K/S ("Western Bulk") for partial summary judgment on whether the COGSA $500 package limitation applies to the claim made against Western Bulk by Steel Coils, Inc. Finally, plaintiff Steel Coils, Inc. ("Steel Coils") has filed a cross motion for partial summary judgment on the issue of whether the COGSA $500 package limitation applies to its claims against the several defendants.

For reasons set forth below the Court concludes that the COGSA $500 package liability applies to the claims against defendants Captain Nicholas and Western Bulk. COGSA does not so limit the claim against Seastar. Accordingly, the plaintiff's motion is DENIED IN PART AND GRANTED IN PART; the motion of defendants Seastar and Captain Nicholas is DENIED IN PART AND GRANTED IN PART; and the motion of Western Bulk is GRANTED.

## BACKGROUND

This case arises out of a shipment of steel coils from Russia to Philadelphia, New Orleans, and other destinations. The steel coils were transported by the M/V CAPTAIN NICHOLAS, which was under time charter by Western Bulk Carriers. Western in turn entered into a voyage charter with Itochu, which company chartered the vessel at the request of its subsidiary, Steel Coils, Inc., the owner of the cargo. Plaintiff Steel Coils, Inc. sued Captain Nicholas Maritime, S.A. (owner of the M/V CAPTAIN NICHOLAS), Seastar Maritime Management, S.A. (manager of the M/V CAPTAIN NICHOLAS); and Western Bulk Carriers K/S (time charterer of the M/V CAPTAIN NICHOLAS) for damage to the cargo. Western Bulk Carriers has also filed a third party claim against Itochu International, Inc., the parent company of Steel Coils, Inc.

At the load port the coils were allegedly loaded into the vessel from enclosed warehouses. Other than some rust on the securing bands of some of the coils' steel wrappers, the bills of lading were issued without exceptions, all in accordance with the pertinent Mates Receipts.

The vessel arrived at Philadelphia on December 28, 1998 and discharged part of the cargo there. According to plaintiff, subsequent surveys of the cargo discharged at Philadelphia revealed fresh water rust and some physical damage. Thereafter the vessel arrived at New Orleans on January 3, 1999, and upon arrival a discharge survey reported evidence of seawater entry into hold No. 1.

The cargo was discharged directly into barges and carried upriver to various ports. Subsequent damage surveys were conducted when the cargo reached its ultimate destinations. These surveys allegedly confirmed damage to the coils, primarily freshwater rust and physical damage.

According to plaintiff, the cargo suffered a reduction in market value, and Steel Coils, Inc. incurred a corresponding loss in the amount of $323,150.76, exclusive of interest and costs. Plaintiff alleges that these damages resulted from the defendants' failure to fulfill their duties under the U.S. Carriage of Goods by Sea Act, ("COGSA") 46 App.U.S.C.A. § 1300 *et seq.*[1]

1. COGSA applies to "all contracts for the carriage of goods by sea to or from ports of the United States in foreign trade." 46 App. U.S.C.A. § 1312. The provisions of COGSA are not generally applicable to charter parties. *Id.* § 1305. A shipper and carrier may agree, however, to a "Clause Paramount" by which the terms of COGSA are incorporated into a charter party. *United States v. Ocean Bulk Ships, Inc.,* 248 F.3d 331, 335 (5th Cir.2001)(citing 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 10–15, at 89 & n. 6).

COGSA sets up a complex system of burdens and accompanying presumptions of liability based on strong policy considerations specific to the context of cargo loss. *Id.* § 10–23, at 115. Under COGSA, a shipper's prima facie case of cargo loss or damage creates a presumption of liability, shifting the burden to the carrier, which must prove: (1) that it exercised due diligence to prevent the loss or damage to the cargo; or (2) that the loss or damage was the result of one of the COGSA's enumerated "uncontrollable causes

Plaintiff further claims that the defendants can not avail themselves of the $500 per package limitation which COGSA provides to carriers.[2] Plaintiff contends that it is a holder in due course of bills of lading which do not give notice of the $500 limitation nor of an opportunity to avoid the limitation by declaring a higher value. The bills of lading in this case do contain a "General Paramount Clause" which makes reference only to the Hague Rules as contained in the International Convention and to the Visby Amendments, but no reference is made to COGSA or the $500 package limitation.[3]

Defendants claim that the November 25, 1998 voyage charter was one in a series of agreements or contracts negotiated at Steel Coils' request by Itochu with Western Bulk. Defendants point out that Clause 32 of the charter party provides that the "USA Paramount Clause" was to be inserted in all bills of lading issued for cargo pursuant to the charter party.[4] Although this requirement was not complied with, defendants argue that the mere reference

---

of loss." *Ocean Bulk Ships, Inc.*, 248 F.3d at 336.

2. Besides establishing a mechanism of liability for cargo loss or damage, COGSA also entitles a carrier to limit its liability for loss or damage to cargo to $500 per package unless the shipper declares the value of the goods on the face of the bill of lading before shipment. 46 App.U.S.C.A. § 1304(5); *Brown & Root, Inc. v. M/V Peisander*, 648 F.2d 415, 420 (5th Cir.1981). To avoid the COGSA limitation, the shipper may declare the value of the goods on the face of the bill of lading and pay a higher freight rate. Alternatively, the shipper may accept COGSA limitation, profit from a lower freight rate, and procure insurance independently or not at all. *Insurance Company of North America v. M/V Ocean Lynx*, 901 F.2d 934, 939 (11th Cir.1990). In order to enjoy the benefit of the $500 per package limitation, the carrier need only provide the shipper adequate notice of the $500 limitation and a fair opportunity to declare excess value for the cargo. *Brown*, 648 F.2d at 420.

3. The function of a "Clause Paramount" is to specify the law to be applied to the contract of carriage. Schoenbaum, *supra*, § 10–11, at 65. In this case the bills of lading contained a "General Clause Paramount" which provides:

(A) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply. (B) Trades where *Hague–Visby* Rules apply In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968—the Hague–Visby Rules—apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. The Carrier takes all reservations possible under such applicable legislation, relating to the period before loading and after discharging and while the goods are in the charge of another Carrier, and to deck cargo and live animals.

4. Clause 32 of the "Gencon" Charter dated November 25, 1998 provides that the "USA Clause Paramount not to be part of Charter Party, but to be issued as printed in Bills of Lading issued under this Charter Party."

The USA Paramount Clause, not specifically set out in the Charter Party, provides that:
Bills of lading are to include the following clause:
'This bill of lading shall have effect subject to the provisions of [COGSA], which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its responsibilities or liabilities under said Act. If any term of the bill of lading be repugnant to said Act to any extent, such terms shall be void to that extent, but nor further.'
See *Itochu International, Inc. v. M/V HAVJO*, 1998 WL 12195 (E.D.La.)(*citing Associated Metals & Minerals, Corp. v. S/S Jasmine*, 983 F.2d 410, 413 (2nd Cir.1993)).

to the "USA Paramount Clause" in the charter party suffices to make the COGSA package limitation applicable to the present claims made by Steel Coils under COGSA due to the close relationship between Itochu and its subsidiary, Steel Coils, Inc. Indeed, defendants claim that the contract of carriage for the subject cargo is in fact the charter party entered into by and between Western Bulk and Itochu on behalf of Steel Coils, rather than the bills of lading. Defendants suggest that the bills of lading are, therefore, mere receipts for the cargo. Accordingly, defendants argue that Steel Coils is bound by the condition of the charter party which made the COGSA limitation applicable to the bills of lading issued thereunder.

Plaintiff argues that even if the Court concludes that the $500 limitation does apply, Seastar's liability can not be limited as it is not a carrier.

### ANALYSIS

A district court can grant a motion for summary judgment only when the " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986). The court must find "[a] factual dispute ... [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party ... [and a] fact ... [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th

Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995) (citing *Celotex*, 477 U.S. at 322—24, 106 S.Ct. 2548, and Fed.R.Civ.P. 56(e)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249—50, 106 S.Ct. 2505 (citations omitted).

### A. Application of COGSA Limitation to Steel Coils's Claim against Western Bulk

The following facts are uncontested or do not present a genuine issue of material fact:

(1) The cargo of steel coils was carried aboard the M/V CAPTAIN NICHOLAS I from Riga, Latvia to the United States.

(2) Captain Nicholas Maritime, S.A. was the owner of the M/V CAPTAIN NICHOLAS I and Seastar Maritime Management, S.A. was the manager of the M/V CAPTAIN NICHOLAS I.

(3) Itochu International, Inc. negotiated the voyage charter of the M/V CAPTAIN NICHOLAS I.

(4) Clause 32 of the voyage charter provides that "USA Clause Paramount not to be part of Charter Party, but to be issued as printed in Bills of Lading issued under this Charter Party."

(5) The voyage charter between Itochu and Western Bulk was formed at the request of Steel Coils, Inc. to facilitate the shipment of cargo from Latvia to the United States.

(6) Steel Coils, Inc. is a subsidiary of Itochu.

(7) Steel Coils paid the freight for the shipment in question directly to Western Bulk.

(8) Steel Coils paid Itochu a commission for the chartering of the ship.

Both plaintiff and the defendants have submitted the deposition testimony of Juan Olvera, a Senior Chartering Specialist for Itochu International, in support of their motions. No evidence is submitted to contradict the testimony of Mr. Olvera, although the parties vehemently disagree as to the legal significance and implications of the facts to which Mr. Olvera attests.

The testimony of Juan Olvera sheds light on the relationship that existed between Itochu and Steel Coils.

Q. When did the relationship between Steel Coils and Itochu begin?

A. That was sometime before I joined the company. I think it was sometime around 1994.

Q. And what was the basis of the commercial relationship?

A. Well, as I mentioned before, Steel Coils was a subsidiary of Itochu.

Q. And Steel Coils would come to Itochu, to you, and request that you charter a vessel?

A. That's correct.

Q. Did you discuss the freight rates for the particular vessels at the time of the charter party?

A. Yes.

Q. Did you discuss the particular terms of the charter party with Steel Coils at the time of the charter?

A. Not of each charter, but some of them, yes.

Q. When you say some of them, are you saying that when you would change the terms of the head charter, that you would discuss those terms with Steel Coils?

A. Yes. It would be—there would be discussions between us on certain clauses to the recommendation of our insurance company if it needed to be amended or improved.

(Deposition of Juan Olvera, pp. 36–38)

Q: All right. My brief understanding as far as some of the commercial relationship between Itochu and Steel Coils was that when Steel Coils had a cargo that it wanted to move, it would come to you to find a ship for them. Is that sort of a brief version of it?

A: Yes, that's correct.

(Deposition of Juan Olvera, p. 103, lines 2–9)

Q: So as far as you know, Itochu was the exclusive charterer, if you will, for Steel Coils, correct?

A: That's correct.

(Deposition of Juan Olvera, p. 103, lines 17–20)

Q: What did you charge Steel Coils for your trouble?

A: 1.25 percent commission.

Q: So just a brokerage commission?

A: That's correct.

(Deposition of Juan Olvera, p. 105, lines 2–6)

In his deposition, Mr. Olvera indicated the frequency with which Itochu would make shipping arrangements on behalf of Steel Coils:

Q: In the negotiation of 40 to 50 vessels for Itochu during a year, how many of those would be for Steel Coils?

A: I would say about 70 to 60 percent of those.

Q: And on the 70 to 60 percent of the charters that you negotiated for Steel

Coils, did you always utilize your standard terms?

A. Yes.

Q: And in the 70 to 60 percent of the standard terms that you negotiated, did you always have a U.S.A. Paramount Clause?

A: Yes, as per our charter party.

(Deposition of Juan Olvera, p. 44, lines 6–19)

■ As mentioned earlier, COGSA entitles a carrier to limit its liability for loss or damage to cargo to $500 per package unless the shipper declares the value of the goods on the face of the bill of lading before shipment. *See* 46 App. U.S.C.A. § 1304(5); *Brown & Root, Inc. v. M/V PEISANDER*, 648 F.2d 415, 420 (5th Cir.1981). The purpose of the COGSA limitation is to "restrain the superior bargaining power wielded by carriers over shippers by setting a reasonable limitation on liability that the carriers could not reduce by contract." *Ins. Co. of North America v. M/V Ocean Lynx*, 901 F.2d 934, 939 (11th Cir.1990); *see Allstate Ins. Co. v. Inversiones Navieras Imparca*, 646 F.2d 169, 171 (5th Cir.1981). To avoid the COGSA limitation, the shipper may declare the value of the goods on the face of the bill of lading and pay a higher freight rate. Alternatively, the shipper may accept the COGSA limitation, profit from a lower freight rate, and procure insurance or assume the risks itself. The economic choice of whether to accept the COGSA limitation lies with the shipper. The carri-

er need only provide the shipper adequate notice of the $500 limitation and a fair opportunity to declare excess value for the cargo. *See Ins. Co. of North America*, 901 F.2d at 939 (citing *Brown*, 648 F.2d at 420).

■ In this case, the charter party was negotiated between Western Bulk and Itochu and was based on Itochu's standard terms which called for the inclusion of the USA Clause Paramount in the bills of lading. Itochu actively solicited the lowest freight rate available for the carriage of this cargo on the basis of its standard terms including the provision that COGSA, with its attendant package limitation and carrier's rights and immunities, would apply. As mentioned previously, Clause 32 of the charter party between Itochu and Western Bulk provides that "USA Clause Paramount not to be part of Charter Party, but to be issued as printed in Bills of Lading issued under this Charter Party." In this way the parties expressed their consent to the applicability of the COGSA limitation and agreed that COGSA be expressly referenced in the bills of lading issued pursuant to the charter party. However, contrary to this express requirement of the charter party, the bills of lading prepared by Steel Coils' freight forwarder, Servestal, did not contain the USA Clause Paramount. Rather, a "Congen bill 1994" form which contains a more general Paramount Clause was used, and the USA Clause Paramount was not added to the bills of lading.[5] The General Paramount Clause does not reference COGSA.

---

5. In this case, the bills of lading each contained a "General Paramount Clause" which provided:

   (A) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of ship-

ment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply. (B) Trades where *Hague–Visby* Rules apply In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968—the Hague–Visby Rules—apply com-

On the basis of the failure of the bills of lading to contain the USA Clause Paramount, Steel Coils argues that the COGSA limitation does not apply to this shipment. In essence, Steel Coils argues that since the charter was negotiated by Itochu, not Steel Coils, its terms should be ignored when deciding whether the package limitation should apply. Steel Coils contends that as a holder in due course of the bills of lading, it is not effected by Clause 32 of the charter party between Itochu and Western Bulk. Defendants, however, argue that Steel Coils was not a holder in due course of the bills of lading. Thus, the fact that the bills of lading do not expressly give notice of COGSA and the $500 package limitation is not dispositive. Instead, defendants argue that Itochu was the agent or "alter-ego" of Steel Coils, and that Steel Coils is bound by the terms of the November 25, 1998 charter party that serves as the contract of carriage.

█ Under the law, a bona fide holder or purchaser for value of a bill of lading which does not specifically incorporate the terms of the charter party will not be bound by the charter party terms. But the purchaser for value must be a true good faith purchaser without notice of the applicability of COGSA set forth in the charter party.

Thus the seminal question is whether Steel Coils was an innocent or naive purchaser or whether it was an experienced participant with actual or constructive notice that the charter party referenced COGSA. The answer to a great extent depends on the legal relationship between Itochu and Steel Coils.

█ Principles of agency apply in the maritime law. *Cactus Pipe & Supply Co.,* *Inc. v. M/V Montmartre,* 756 F.2d 1103 (5th Cir.1985). Furthermore, an agency relationship may be express or de facto. *J.R. Stripling v. Jordan Production Co., LLC,* 234 F.3d 863, 870 (5th Cir.2000). In order to demonstrate that a principal/agent relationship exists, it must be shown (1) that the principal indicated that the agent was acting for it, (2) that the agent acted or agreed to act on the principal's behalf, and (3) that the agent was subject to the principal's control. *See* Restatement (Second) of Agency § 1 cmt. a (1958). The principal is affected by the knowledge that the agent has when it acts for him. *See* Restatement (Second) of Agency § 278.

In this instance Steel Coils is virtually a wholly owned subsidiary of Itochu. In addition, Itochu had a long history of negotiating Steel Coils freight contracts. In fact, Itochu chartered all vessels for the carriage of Steel Coils' cargo in the United States. Based on the evidence, the Court finds that there existed an agency relationship between Itochu and Steel Coils such that Steel Coils may be imputed with the knowledge of Clause 32 of the voyage charter. *See Metropolitan Wholesale Supply, Inc. v. M/V ROYAL RAINBOW,* 12 F.3d 58, 62 (5th Cir.1994). The true contract for the carriage of the cargo was the voyage charter between the time charterer, Western Bulk, and Steel Coils Inc., through their agent, Itochu. For this reason, the Court concludes that Steel Coils had notice of the COGSA $500 package limitation. Additionally, the Court finds that Steel Coils, through its agent Itochu, had a fair opportunity to declare a higher freight value and to pay a higher rate. Accordingly, the plaintiff's claims under

pulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. The Carrier takes all reservations possible under such applicable legislation, relating to the period before loading and after discharging and while the goods are in the charge of another Carrier, and to deck cargo and live animals.

COGSA are limited by the $500 per package limitation. Furthermore, Steel Coils directly benefitted from the lower freight rate negotiated by Itochu. To allow it now to benefit from the inapplicability of the package limitation would be inequitable. *See Steel Coils v. M/V LAKE MARION,* 2001 WL 1518302 (E.D.La.).

*B. Steel Coils's Claims against Seastar and Captain Nicholas*

Defendant Seastar contends that it can not be liable to plaintiff because under paragraph 2 of the voyage charter party, any and all responsibility resulting from want of due diligence or default of the manager is the responsibility of the owners alone. Seastar additionally claims that implicit in the language of paragraph 2 is the fact that if Owners are able to limit their liability pursuant to COGSA, such limitation would extend to the manager's acts, omissions or other alleged defaults.

Paragraph 2 of the voyage charter (plaintiff's exhibit 2) titled "Owner's Responsibility Clause," provides:

Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.

Giving effect to the plain meaning of the language employed and considering the paragraph in context with the entire contract, the Court finds that the Owner's Responsibility Clause serves merely to define under what circumstances the owner may be liable for cargo damage. The clause does not contractually limit the liability of the manager.

The law is clear that a vessel manager may be found liable for cargo damage under either contract or tort theories regardless of whether there is a contract with the vessel owner governing the carriage of those goods. *See The John G. Stevens,* 170 U.S. 113, 18 S.Ct. 544, 42 L.Ed. 969 (1898); *Associated Metals v. ALEXANDER'S UNITY MV,* 41 F.3d 1007 (5th Cir.1995). In the present case, plaintiff's theory of liability against Seastar sounds in tort. Steel Coils has alleged specific acts of negligence on the part of Seastar concerning its failure to perform its duties as a vessel manager. As a consequence of not being a carrier, the Court finds that the clause does not extend any COGSA limitation enjoyed by the owner to Seastar as manager of the vessel. *See Robert C. Herd & Co. v. Krawill Machinery Corp.,* 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959); *Cerro Sales Corp. v. Atlantic Marine Enterprises,* 403 F.Supp. 562 (S.D.N.Y.1975); Schoenbaum, *supra,* § 10–8, at 51, and § 10–25, at 124.

Accordingly, Steel Coils' general maritime claim against Seastar is not limited in any way and Seastar's motion for summary judgment is DENIED.

### CONCLUSION

For reasons set forth above, the motion of defendants, Captain Nicholas Maritime S.A. ("Captain Nicholas") and Seastar Maritime Management, S.A. ("Seastar"), for summary judgment on the issues of (1) whether they should be dismissed on the basis of not being "carriers" as defined by the Carriage of Goods by Sea Act, ("COGSA"), 46 App.U.S.C.A. § 1300, *et seq.,* and (2) whether COGSA's $500 package limitation should be applied in respect to Steel Coils' claim against Seastar and Captain Nicholas is DENIED IN PART AND GRANTED IN PART. The motion of defendant Western Bulk Carriers for partial

summary judgment on whether the COGSA $500 package limitation applies to the claim made against Western Bulk by Steel Coils, Inc. is GRANTED. The motion of plaintiff Steel Coils, Inc. for partial summary judgment on the issue of whether the COGSA $500 package limitation applies to its claims against the several defendants is GRANTED IN PART AND DENIED IN PART.